**POLAROID CORPORATION, Plaintiff,**

v.

**POLARAD ELECTRONICS CORPORA-
TION, Defendant.**

**Civ. No. 17132.**

United States District Court
E. D. New York.

March 29, 1960.

See also D.C., 23 F.R.D. 182.

Silver, Saperstein & Barnett, New York City, for plaintiff, Donald L. Brown, Cambridge, Mass., and Isaac M. Barnett, New York City, of counsel.

Darby & Darby, New York City, for defendant, Morris Relson and Howard C. Miskin, New York City, of counsel.

RAYFIEL, District Judge.

This action was commenced on December 11, 1956. The complaint states three causes of action. The first and third allege infringement of trademarks registered respectively in the United States Patent Office and in the office of the Secretary of State of the State of New York. The second is for unfair competition. All are based on the claim that the defendant's trade name and trademark are confusingly similar to those of the plaintiff.

The answer denies generally the allegations of the complaint, sets up, among others, the affirmative defense of estoppel by reason of laches, and counterclaims for the following relief:

(a) a declaratory judgment decreeing

(1) non-liability, or, as an alternative,

(2) that the plaintiff be adjudged to have infringed upon the defendant's trade name, and to have competed unfairly with it as to products in the field of television manufactured by the defendant, and

(b) that the plaintiff's registrations be cancelled and adjudged null and void.

The plaintiff is a Delaware Corporation, having its principal offices at No. 730 Main Street, Cambridge, Massachusetts, and the defendant a New York corporation, with principal offices at 43—

20 34th Street, Long Island City, New York. Jurisdiction arises under Sections 1114(1) and 1121 of Title 15, and Sections 1332 and 1338 of Title 28, of the U.S.C.

The history of the parties follows. The plaintiff was organized in 1937. In 1938 it acquired from Sheet Polarizer Company, Inc., the then owner thereof, the trademark "Polaroid", which had been registered in the United States Patent Office in 1936 under No. 337404. The plaintiff is also the owner of 21 additional registrations of said trademark, filed in said Patent Office between 1941 and 1956, all of which are referred to in, and form the basis of, the complaint.

The defendant's earliest predecessor was organized in December, 1944, when Paul H. Odessey, presently Chairmen of its Board, filed his certificate of doing business under the assumed name "Polarad Electronics Co." In December, 1945 he formed a partnership with D. Lawrence Jaffe, which continued to conduct business under said assumed name. In August, 1948 the partnership business was incorporated under the name Polarad Television Corp., and by a certificate filed in June, 1949 the corporate name was changed to Polarad Electronics Corporation. The names "Polaroid" and "Polarad" have been used uninterruptedly by the plaintiff and the defendant respectively, the former since 1936 and the latter since 1944.

Section 1114(1), supra, the basis of the first cause of action herein, reads, in pertinent part, as follows: "Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services; * * * shall be liable to a civil action by the registrant * * * *."

The third cause of action, charging infringement of plaintiff's trademark registered in the office of the Secretary of State of the State of New York, is predicated on Section 368–b of the General Business Law of the State of New York, which is substantially identical with Section 1114(1), supra. Section 368–d of said General Business Law preserves the common law right to trade marks as well as the right to enforce them.

The second cause of action is based on the claim that the use by the defendant of a name and mark allegedly confusingly similar to those of the plaintiff constitutes unfair competition. There is nothing particularly distinctive about the plaintiff's trademark. It is chiefly upon the similarity of the trade names that the plaintiff bases its claim for relief. Despite the fact that the issues are, in the opinion of this Court, relatively simple, the trial record is upwards of 1600 pages in length, the briefs 400 pages long, and the exhibits several hundred in number.

The issues are:

(a) Has the public purchased products or services from the defendant in the belief that they were those of the plaintiff?

(b) If not, is there likelihood that that may occur in the future?

(c) Has the defendant, through and by reason of the similarity of the names of the parties, competed unfairly with the plaintiff?

■■ To begin with, there is, in my considered opinion, a similarity, though not a confusing one, between the trade names of the parties, but mere similarity, absent a resemblance between their products, does not constitute infringement or unfair competition. American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317. There must be more than that. There must be proof that such similarity has resulted or may result in confusion in the minds of consumers as to the source or origin of the products involved, confusion which has led or might lead a purchaser of defendant's goods to believe he was purchasing those of the plaintiff.

It was therefore necessary for the latter to establish that the defendant's products or services are similar to those of the plaintiff. In this, for reasons hereinafter stated, it has failed.

 The crucial date involved here is December, 1944, for the plaintiff, if it is to prevail, must establish that the defendant, which was organized on that date, unlawfully appropriated a trade name and mark which was likely to create confusion in the minds of those seeking plaintiff's products. In the case of Federal Glass Company v. Loshin, 2 Cir., 224 F.2d 100, at page 102, the Court of Appeals, in affirming an order of the United States District Court of Connecticut (Judge Smith) denying the plaintiff's motion for a summary judgment in its action to enjoin the use by the defendant of its trade name, which was identical with that of the plaintiff, said, "Judge Smith was clearly correct in deciding that plaintiff would have to show its reputation with the general public in 1926 * * *. And 1926 was the proper date for establishing this reputation, since it was then that the defendants began to operate under their trade name".

The defendant, as hereinabove stated, was organized in 1944. Prior to *1944* plaintiff's business activities, except for certain Government work hereinafter in this paragraph referred to, were confined, virtually in their entirety, with exceptions not here pertinent, to sheet polorizing material and products made therefrom, optical goods, desk lamps, stereoscopic viewers, optical filters and photographic prints. During World War II the plaintiff was engaged almost exclusively in Government work. In addition to supplying some of the aforementioned products the plaintiff performed services for the Government in research and development, involving a number of articles for use in the prosecution of the war. Most of these were optical goods of various kinds, but a few were, either wholly or in part, in the field of electronics, and, according to the record, were the first in that field manufactured by the plaintiff since the estab-

lishment of its business. It may be added that the plaintiff, since World War II, has virtually abandoned the production of articles in that field. It is true that a part of the plaintiff's gross business prior to 1944 represented the sale of corrector plates to the television industry, but it was comparatively small in volume and the plates, when installed, even if bearing the trade name of the plaintiff, occupied but an inconspicuous place in the set. That was the plaintiff's only association with the electronics field, and cannot be said to put it in that industry. But even if it were engaged in that field, it could not isolate the defendant therefrom, since the industry is so vast in scope that the defendant's operations therein, extensive as they are, cover only a minimal part of the electronics field.

Since 1944, and more particularly since the advent of its well-known 60-second Land Camera in 1948, the character of the plaintiff's business has undergone material change, and its volume, dollarwise, has increased vastly. Its advertising budget is proportionately greater. Whereas, prior to 1944, its expenditures for advertising were small, averaging some $20,000 for the years 1937 through 1944, the average for each of the last four of those years being slightly in excess of $15,000, they have increased regularly since then, and in substantially larger amounts. But this has been due, not to the expansion of plaintiff's general business, the volume of which varies little from that of the pre-1948 years, but, rather, to the greatly increased use of television and other media for publicizing its Land 60-second Camera and film, which, in 1956, 1957 and 1958, together with polarizing material, accounted for 96 per cent of its total gross business.

The plaintiff contends that the parties are in *direct* competition and that their fields of activity *overlap*. To support its position it refers, among other things, to a number of its products which it claims are electronic in character, and as to which it claims that the defendant

is competing unfairly. Among them are articles the production of which has long been abandoned, and others which are not in the electronics field. Further, the plaintiff has failed to show that any of the defendant's products compete with those made by it. The plaintiff, it is true, produces a few items identified with electronics, but this activity began very recently, and none of the defendant's products competes with any of said items.

The defendant's commercial activity since its organization, as to both goods and services, has been almost solely in the electronics field, consisting, in substantial part, of studio television, microwave and military electronic equipment, by far the larger part of which has been, and still is, supplied to the Government. Much of the remainder of its products are in the radio field, the bulk thereof being likewise sold to the Government. It is true that for a brief period the defendant engaged in the sale of automotive equipment and other articles outside the field of electronics, but they were sold by a subsidiary or division of the defendant which operated under the name of Stark Products, and which did not use the defendant's name or mark. That enterprise was liquidated in 1958. It appears, thus, that the field of activity of the defendant does not conflict with or overlap that of the plaintiff. No evidence was adduced by the plaintiff to show that any business or trade had been diverted from the plaintiff to the defendant, nor does it appear that any such diversion is likely to occur. I am satisfied that the defendant neither manufactures nor sells any of the plaintiff's products hereinabove described, or any of the articles or products covered by plaintiff's registration certificates which are the subject matter of the complaint. As a matter of fact, plaintiff's witnesses, Messrs. Fuller and Kriedel, conceded that the defendant had not "palmed off" its products as those of the plaintiff, and that the latter suffered no loss of sales attributable either to confusion of its customers or the competition of the defendant.

Nor has the plaintiff offered any proof that because of the similarity of names, or for any other reason, it has suffered an impairment of its reputation or prestige either with the general public or in industry, or the dilution of the distinctive quality of its name.

### As to confusion.

■ The evidence submitted in support of plaintiff's claim of confusion consisted chiefly of misdirected letters and statements. Some were letters addressed to one of the parties, requesting information as to prices, etc., of articles made *only* by the other. In each instance, and they were relatively few in number, the party receiving the letter forwarded it to the proper party. Almost all of the letters in question were received since the commencement of the action. They were patently the result of errors of various kinds, such, for instance, as the substitution of the name or address of one of the parties for the other, or the combining of parts of both names in a letter or statement. One such incident involved the return, for repair, to the plaintiff, instead of the defendant, of an article sold by the latter to one of its customers, an article, incidentally, which the plaintiff has never manufactured or sold. *There were not more than one hundred such instances over a period of years*, an insignificant fraction of the mail received by the plaintiff and the defendant, the *daily* volume of which, according to the testimony, numbered approximately 1,000 and 600 respectively.

All of the aforementioned incidents were clearly due to palpable carelessness on the part of the clerks or other subordinate employees involved therein, and, since no product is manufactured or sold competitively by the parties herein, neither resulted nor could have resulted in pecuniary or other loss to the plaintiff.

But there are other reasons why there is no likelihood of confusion. Aside from the United States Government and a few other customers they have in common, but to whom they supply disparate

products, the parties serve different, and different kinds of customers. Articles which constitute the bulk of plaintiff's gross sales, such as cameras, film and optical goods, are sold to the general public, while the defendant's products, which are in quite different fields of utility, are sold to discriminating purchasers, trained in technical skills. This factor, alone, reduces to a minimum the likelihood of deception and confusion, but there are other reasons. The prices of defendant's products are very substantially in excess of those of the plaintiff. Also, the parties advertise in different media; as to the printed word, the plaintiff in newspapers and in magazines and periodicals of general circulation, and the defendant chiefly in technical and scientific journals and magazines. The plaintiff advertises very extensively in television, probably to the extent of the bulk of its advertising dollars, the defendant not at all.

■ I come now to the defendant's affirmative defense that the plaintiff is estopped from obtaining equitable relief herein by reason of laches. The defendant argues that the plaintiff has known of the use of its trade name "Polarad" for a number of years, and has nevertheless stood by without protest while the defendant continued to grow in size and in public and industrial recognition and reputation. Here, too, the facts appear to support the defendant's position. As early as November, 1945, more than eleven years prior to the commencement of this action, the plaintiff learned of the existence of the defendant and its use of said trade name. Responsible officials of the plaintiff caused an investigation to be made, but made no protest to the defendant respecting the use of the name, although they knew that it was engaged in the production of various electronic devices. On two occasions in 1946, and also in 1950, the same officials, who were officers and/or directors of the plaintiff, learned again of the defendant's operations under its said trade name, and again failed to protest the use thereof. On the occasions hereinabove

referred to the plaintiff, among other things, consulted a well-known credit agency, from which it learned that the defendant was a consultant, designer and manufacturer of electronic, microwave, radio and television equipment. Later in 1950, and twice early in 1951, the plaintiff drew further reports on the defendant from the said agency. And still it did not protest. Later in 1951 the plaintiff learned directly from the defendant of its use of the trade name "Polarad" when the latter, having received one of the aforementioned misdirected letters intended for the plaintiff, forwarded it to the latter. Defendant's covering letter appears to have been seen by counsel and officers of the plaintiff. And still there was no protest.

In 1953, after at least eight years of continuous use of the trade name "Polarad" with the knowledge of the plaintiff, the defendant applied to the United States Patent Office for the registration of its trademark "Polarad". Information respecting the application, including the name and address of the applicant, was available to the plaintiff as a public record. Whether or not it had actual notice of the application, there is no doubt that under the circumstances it had constructive notice thereof. While it is true that the facts in the case of Johnston v. Standard Mining Co., 148 U.S. 360, 13 S.Ct. 585, 37 L.Ed. 480, were entirely dissimilar from those in the case at bar, the principle enunciated there is equally applicable here. At page 370 of 148 U.S., at page 589 of 13 S.Ct. the Court said: " * * * the law is well settled that, where the question of laches is an issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry."

In 1954 and 1955 the plaintiff, according to its file on the defendant, again acquired actual notice of the fact that the defendant was doing business under the said name, but did nothing about it. In August, 1955, when the defendant's

aforementioned application for registration of the trademark "Polarad" was published for the purpose of opposition in the Official Gazette of the United States Patent Office, the plaintiff received direct notice thereof, and filed a Notice of Opposition thereto. The Patent Office Examiner dismissed the opposition, holding that the trademarks of the parties were not confusingly similar. The plaintiff has appealed from that decision to the Commissioner of Patents, who has suspended proceedings on said appeal pending the determination of this action.

In the interim between the commencement of its operations in 1945 and the institution of this action late in 1956 the defendant has advanced steadily both in volume of business as well as prestige in the industry, and has publicized its name, products and services to a continuously increasing extent as the years went on. For instance, its budget for advertising, which was $3,456 in 1946, increased to $180,000 for the year before the trial. It has expended in all for advertising approximately $1,000,000, virtually all of it in scientific and technical journals and professional magazines.

It seems to me that on the basis of the foregoing the defendant was justified in believing, and apparently did believe, that the plaintiff did not consider its trade name and business activities to be in conflict with those of the plaintiff. Under such circumstances it would be inequitable to require the defendant to yield its trade name, which it has used for eleven years without protest, and through which it has, by dint of its industry, built up a good will of considerable value.

The plaintiff contends that its right to Registration No. 540,179 has become incontestable under Section 1065 of Title 15 U.S.C.A., and, hence, that under Section 1115 of said Title laches is not available as a defense to plaintiff's claim of infringement thereof. I think its contention is without merit since its claim comes within the exceptions provided in Section 1065, supra.

In the case of Landers, Frary & Clark v. Universal Cooler Corporation, 2 Cir., 85 F.2d 46, at page 49, Judge Learned Hand said, "Arguendo we will therefore take it that, had the plaintiff pressed its claim in May, 1926, it would have succeeded. It did not do so. On the contrary for five years it did nothing at all, and during those years the defendant's business had grown to a very substantial size. It had invested probably about $100,000 in advertising,—in all of which the word 'Universal' appeared,—and its capital investment had nearly doubled; it had grown from about $500,000 to $900,000. In the face of an unequivocal declaration that the defendant must not use the mark this might not have served, but the plaintiff had not made any such * * *. When for eight years one plans one's business on the assumption that one may use a mark, it is a grave dislocation of the business to stop its use; the whole selling organization must be recast and the market re-educated; nobody can estimate what the losses may be. * * " See also Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corp., D.C., 24 F.Supp. 481, affirmed 2 Cir., 105 F.2d 908.

I find (1) that the defendant's use of the trade name and trademark "Polarad" does not constitute infringement of plaintiff's registered trademarks, (2) that the defendant has not competed unfairly with the plaintiff, and (3) that the plaintiff has been guilty of laches.

Accordingly, because of

(a) the absence of confusion or the likelihood thereof,

(b) the wide disparity in the type and kind of the custom of the parties,

(c) the dissimilarity of their products,

(d) the absence of proof that the similarity of names and/or the manner of conduct of defendant's business has resulted in the impairment of plaintiff's reputation or prestige with the general public or in industry, or the dilution of the distinctive quality of its name, and

(e) the plaintiff's laches, the plaintiff is not entitled to equitable relief.

The record in the case does not support the defendant's counterclaim. In addition, what has been said here respecting the plaintiff's laches, applies equally to the defendant.

This opinion will serve as the findings of fact and conclusions of law. The parties may, if they wish, submit within 20 days additional findings and conclusions.