COFFEE DAN'S, INC., a corporation,
Plaintiff,

v.

COFFEE DON'S CHARCOAL BROILER,
a corporation, Defendant.

No. 51858.

United States District Court
N. D. California.

Oct. 22, 1969.

## MOTION FOR PRELIMINARY INJUNCTION OPINION AND ORDER

GERALD S. LEVIN, District Judge.

Pursuant to 28 U.S.C. § 1338, plaintiff sues for alleged infringement by defendant of the service mark, "Coffee Dan's" registered under the laws of the United States (15 U.S.C. §§ 1051–1127), for alleged unfair competition by defendant, and for an injunction, damages and accounting.

Plaintiff Coffee Dan's, Inc., ("Coffee Dan's") is a California corporation having a place of business at 8447 Wilshire Boulevard, Beverly Hills, California. The service mark has been used by Coffee Dan's in California since 1945 and used elsewhere since 1911. The service mark has been in use in interstate commerce since 1956.

Coffee Dan's applied to the United States Patent Office to register its service mark on July 24, 1961. Issue of the registered service mark was made by the United States Patent Office on November 6, 1962 (Registered Service Mark #740,365).

Defendant Frank J. Diamos doing business as Coffee Don's Charcoal Broiler has a place of business at 3296–22nd Street, San Francisco, California.[1] Defendant Frank J. Diamos in his affidavit filed herein states on information and belief that the use of the trade name Coffee Don's originated in San Francisco, California, by Donald C. Gillett and Audrey H. Gillett, husband and wife, on or before May 14, 1962. Defendant Frank J. Diamos purchased all right, title and interest to the business transacted under the trade name Coffee Don's from Donald C. Gillett by an agreement executed September 3, 1965.

Plaintiff Coffee Dan's uses its service mark, "Coffee Dan's" in connection with its restaurant, cocktail lounge and coffee shop services. A copy of the relevant

Herzig & Walsh, Albert M. Herzig, Hamer H. Jamieson, Thelma S. Herzig, Beverly Hills, Cal., Fryer, Tjensvold, Feix, Phillips & Lempio, Chas. M. Fryer and Joseph L. Strabala, San Francisco, Cal., for plaintiff.

Mellin, Hursh, Moore & Weissenberger, Jack E. Hursh, Robert W. Dilts, San Francisco, Cal., for defendant.

1. Defendant is not a corporation as alleged by plaintiff in its complaint, but defendant has waived a challenge to the Court's jurisdiction on that ground (Defendant's Memorandum. filed September 8, 1969).

portion of plaintiff Coffee Dan's menu is set out below.[2]

Defendant Coffee Don's uses its trade name, "COFFEE DON'S," in connection with its services as a restaurant specializing in charcoal-broiled hamburgers. The items advertised by Coffee Don's are those commonly consumed in restaurants of a character similar to both plaintiff's and defendant's, but they are

fewer than the items appearing in Coffee Dan's menu.[3]

**I**

A preliminary injunction is an extraordinary and far-reaching remedy, the granting of which is wholly within the discretion of the court. See Dymo Industries, Inc. v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964); Societe

2. BROILED HAMBURGER STEAK (½ lb.) Smothered in Onions ...... 1.45
   FRIED TENDER SWEET CLAMS and Tartar Sauce ................ 1.35
   TENDER CALF'S LIVER Smothered in Onions or Grilled Bacon ...... 1.45
   TOP SIRLOIN STEAK Broiled to Your Preference .................. 2.25
   FRIED CHICKEN, Half Golden Fried Chicken ...................... 1.65
   EASTERN SCALLOPS (Eight), Deep Fried to a Golden Brown ...... 1.35
   FRESH JUMBO LOUISIANA SHRIMP (Four), Snappy Sauce ... 1.75
   BROILED HALIBUT STEAK Tartar Sauce .................. 1.65
   SEA FOOD COMBINATION: Shrimp, Scallops, Fried Clams .... 1.75

3.

Comptoir De L'Indus., Etc. v. Alexander's Dept. St., 299 F.2d 33, 35, 1 A.L.R.3d 752 (2d Cir. 1962); Citizens Committee for Hudson Valley v. Volpe, 297 F.Supp. 804, 806 (S.D.N.Y.1969). Because of its drastic nature, a preliminary injunction will be granted only where the plaintiff makes a clear and convincing showing of need. Udall v. D. C. Transit System, Inc., 131 U.S.App.D.C. 381, 404 F.2d 1358, 1360 (1968). *Dymo Industries, supra;* Canadian Club Corporation v. Canada Dry Ginger Ale, 46 F.2d 964 (3rd Cir. 1931); 43 C.J.S. Injunctions § 17, p. 428, and only where plaintiff makes an affirmative showing of the existence of the following requirements:[4]

(1) probability of success on the merits at trial;

(2) irreparable injury;

(3) maintenance of the status quo;

(4) a balance of equities in favor of plaintiff.

## 1. *Probability of Success on the Merits at Trial*

■ In order to succeed on its motion for a preliminary injunction, the plaintiff must show with reasonable certainty that it will prevail on the merits at trial. *Dymo Industries, supra;* Speedry Products, Inc. v. Dri Mark Products, Inc., 271 F.2d 646, 648 (2d Cir. 1959). On an application for a preliminary injunction the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact. *Dymo Industries, supra;* Alpha Distributing Co. of Cal. v. Jack Daniel's Distillery, 207 F.Supp. 136, 138 (N.D.Cal.1961), aff'd 304 F.2d 451 (9 Cir. 1962).

■ Plaintiff has charged defendant with infringement of its service mark and unfair competition. Despite the

seeming incongruity of results reached in many of the cases, it is clear that before plaintiff may prevail on either cause of action there must be likelihood of confusion. Paul Sachs Originals Co. v. Sachs, 325 F.2d 212, 214 (9th Cir. 1963) citing Plough, Inc. v. Kreis Labs., 314 F. 2d 635 (9th Cir. 1963). The court in *Paul Sachs* cited with approval the following factors as bearing on the question of whether a sufficient showing of a likelihood of confusion had been made:[5]

(1) the area of concurrent sale;

(2) the extent to which the goods are related;

(3) the extent to which the mark and the alleged infringing name are similar;

(4) evidence of bad faith or intention of the defendant in selecting and using the alleged infringing name;

(5) evidence of actual confusion;

(6) the "strength" or novelty of the plaintiff's mark.

■ The discussion hereafter of foregoing factors indicates that plaintiff fails to make such a sufficient showing of a likelihood of confusion to warrant the granting of injunctive relief.

*First,* the areas of sale, San Francisco and Los Angeles, are sufficiently far apart that it can be reasonably expected that few, if any, people patronize both restaurants. In fact, plaintiff has made no showing that prospective patrons are confused by thinking that both are branches of the same operation.

*Second,* while there is similarity between plaintiff's name and that of the defendant's, we cannot say as a matter of law that the two are so similar as to necessarily create a likelihood of confusion on behalf of the buying public.[6] Moreover, in regard to plaintiff's allega-

---

4. Carling Brewing Co., Inc. v. Philip Morris, Inc., 297 F.Supp. 1330 (N.D.Ga. 1967).

5. Cf. factors used to calculate "likelihood of confusion" in Miss Universe, Inc. v. Patricelli, 408 F.2d 506, 509 (2d Cir. 1969).

6. For a listing of similar names found confusing, see generally I. T. S. Industria Tessuti Speciala v. Aerfab Corp., 280 F. Supp. 581, 586, 587 (S.D.N.Y.1967).

tion of infringement of its service mark, this court has great difficulty in finding any confusing similarity between the marks of plaintiff and that of defendant other than the otherwise common use of a chef's figure.[7]

*Third,* there is no evidence that defendant intended to trade on plaintiff's reputation or that, until the filing of this action, he even knew of the existence of plaintiff.[8]

*Fourth,* plaintiff has presented no evidence whatsoever that anyone has in fact frequented both plaintiff's and defendant's establishments and has been confused as to the relationship of the two businesses.

*Fifth,* we do not find plaintiff's name or its service mark to be so distinctive, novel or fanciful as to bring them under the holding of the Stork Restaurant v. Sahati, 166 F.2d 348 (9th Cir. 1948).

In the *Stork* case, the world-famous Stork Club of New York brought an action to enjoin defendant Sahati and others from using the trade name, the "Stork Club," and from using its insigne.

Defendants had been operating a small bar, tavern and cocktail lounge in San Francisco under the name, "Stork Club," and had used the plaintiff's insigne, a stork standing on one leg and wearing a high hat and monocle. The District Court for the Northern District of California [9] denied the motion of plaintiffs for a preliminary injunction and, at the trial of the case, found for defendants in denying plaintiff's request for a permanent injunction. The Court of Appeals for the Ninth Circuit reversed on appeal with directions to grant the permanent injunction prayed for to plaintiff-appellant.

In reaching its decision, the Circuit Court of Appeals noted, first, great sums were expended by plaintiff in nationwide advertising aimed at enhancing plaintiff's reputation and, second, defendants were reaping where they had not sown by using the prestige of the name "The Stork Club" to increase their business. Based upon the foregoing the court found an express fraudulent intent on the part of defendants to benefit

7.

[A217]          [A216]

8. Affidavit of Frank J. Diamos.

9. United States District Court, Northern District of California, Action No. 25707.

from the extensive advertising purchased by plaintiff.[10]

The instant case, however, is distinguishable from the *Stork* case in the following particulars:

*First,* the *Stork* case involved an application for a permanent, and not a preliminary, injunction. Thus the Circuit Court of Appeals had the advantage of a full trial record in reaching its decision. That court gave no hint that the district court's denial of the motion for a preliminary injunction had been improvident or erroneous.

*Second,* defendants in the *Stork* case used a trade name and trade symbol which was *identical in every respect* to those employed by plaintiff. Because of this exact duplication, it was highly unlikely that defendants had taken the name and insigne of The Stork Club other than for the specific purpose of benefiting from that Club's widespread reputation. In the instant case, however, neither the trade names nor the service marks of the parties are identical, and, as noted above, defendant does not claim any knowledge of plaintiff's existence prior to the latter's filing suit.

*Third,* and most importantly, the court in the *Stork* case was cognizant of the uniqueness of plaintiff's name and the prestige resulting therefrom. Consequently, the Court of Appeals of the Ninth Circuit held that such uniqueness entitled plaintiff to a great degree of protection. Judge Garrecht wrote in the opinion of that court (166 F.2d 348, at page 355):

"8. *A 'Fanciful' Trade Name is Especially Protected*

'The Stork Club' is a trade name that in the language of the books, might well be described as 'odd', 'fanciful', 'strange', and 'truly arbitrary.'

*       *       *       *       *       *

In other words, there is little likelihood that the appellant's predecessors and the appellees' predecessor hit upon the names 'The Stork Club' and 'Stork Club', respectively, as acts of independent creation. It seems a clear case of a junior appropriator's seeking to capitalize on the prestige of the senior, of which more hereafter.

Equity gives a greater degree of protection to 'fanciful' names than it accords to names in common use." [11]

The court added (at page 361) that defendants need not have appropriated plaintiff's "fanciful" or "arbitrary" trade name since it had an "infinity" of other names from which to choose.

Later cases citing the *Stork* case make it clear that the holding in the *Stork* case should only be applicable where the trade name infringed upon was itself fanciful or original. See Sunbeam Lighting Co. v. Sunbeam Corporation, 183 F.2d 969, 973, (9th Cir. 1950). In Faciane v. Starner, 129 F.Supp. 430 (N.D.Fla.1955) aff'd 230 F.2d 732 (5th Cir. 1956) the court found no trademark infringement where both plaintiff and defendant operated restaurants under the name "White Kitchen," noting that this name embodied ordinary words, and not words which could be considered unusual or fanciful. In discussing the *Stork* case, the court in *Faciane* noted at page 432 that:

"The decision of the same court in other cases is illustrative of the fact that the pronouncement of the court in the *Stork* Restaurant case is applicable only in unique cases such as the facts disclosed in that case."

In the instant case, it is patent that no such unique, fanciful or arbitrary name is involved. "Coffee" is hardly an unusual adjective in a restaurant's name, and defendant states in his affidavit that "Don's" in "Coffee Don's" derives from

---

10. See generally El Chico, Inc. v. El Chico Cafe, 214 F.2d 721 (5th Cir. 1954). See also Hot Shoppes, Inc. v. Hot Shoppe, Incorporated, 203 F.Supp. 777, 784 (M.D. N.C.1962) limiting the *Stork* case to situations where the reputation zone of a name or mark is nationwide.

11. Accord: G. D. Searle & Company v. M D X Purity Pharmacies, Inc., 275 F. Supp. 524, 531 (C.D.Cal.1967).

the first name of the establishment's original owner, Donald Gillett. Nothing could be more common than the use of one's own name with respect to his business. In the recent case of Friend et al. v. H. A. Friend and Company, Inc., 416 F.2d 526 (9 Cir. Sept. 12, 1969) the court reaffirmed the settled proposition that "[T]he law is reluctant to preclude an individual's business use of his own name when no attempt to confuse the public has been made (Citing cases)."

Although at this stage of the proceedings it is not the task of this court to decide the instant case on its merits,[12] it is abundantly clear that under the factors enunciated above, it is at least doubtful that plaintiff will ultimately succeed in obtaining the permanent injunction it seeks.

### 2. Irreparable Injury

■ In order to prevail here, plaintiff must show that his legal remedy is inadequate, that is, that he is faced with immediate and irreparable injury for which he cannot be compensated with money damages. See *Dymo Industries, supra*, 326 F.2d at 143; *I. T. S. Industria, supra*, 280 F.Supp. at 585.

■ Irreparable injury has been defined as that injury which is certain and great. Federal Maritime Comm. v. Atlantic & Gulf/Panama Can. Zone, 241 F.Supp. 766, 781 (S.D.N.Y.1965). However, plaintiff has made no showing that it has suffered any injury at all, let alone injury that is "great." Even assuming arguendo that plaintiff's business has suffered loss, plaintiff has not shown the inadequacy of money damages therefor.

### 3. Status Quo

■ The primary purpose of a preliminary injunction is to preserve the status quo *ante litem,* Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2d Cir. 1953), that state being defined as the last uncontested status which preceded the pending controversy. See Tan-

ner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963); cert. den. 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed. 2d 55 (1963).

■ Because it is indisputable that the status quo *ante litem* in the instant case was the unfettered operation by both parties of their respective businesses, it is certain that the granting of a preliminary injunction in this case would destroy that status. Absent a showing of great and immediate harm, this factor alone would be sufficient to deny a preliminary injunction.

### 4. Balancing the Equities

■ It is the long-standing and salutary policy of courts of equity to balance the equities of the parties before it in determining whether or not to issue injunctive relief. The court will consider the advantage to be gained by plaintiff if it is granted the injunction against the hardship to be suffered by defendant. See *Hamilton Watch, supra*, 206 F.2d at 740; Clairol Incorporated v. Gillette Company, 270 F.Supp. 371, 381 (E.D.N.Y.1967); aff'd 389 F.2d 264 (2d Cir. 1968); Helena Rubinstein, Inc. v. Frances Denney, Inc., 286 F.Supp. 132, 133 (S.D.N.Y.1968); Chips 'N Twigs, Inc. v. Blue Jeans Corp., 146 F.Supp. 246, 248 (E.D.Pa.1956). Absent malicious conduct, if the burden of a preliminary injunction is "all out of balance" with the benefit to be obtained by plaintiff, it should be denied. See Alpha Distributing Co. v. Jas. Barclay & Co., 215 F.2d 510, 511 (9th Cir. 1954).

■ One of the factors taken into account in balancing the equities is the nature of the injunctive relief sought, that is, will it merely proscribe a course of action (prohibitory injunction) or will it require defendant to take affirmative, costly remedial steps (mandatory injunction). Mandatory injunctions are disfavored by the courts, especially before trial, and therefore such injunctions will be issued with great caution and only in

---

12. See Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 808 (9th Cir. 1963); cert. den. 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963).

exceptional cases. 42 Am.Jur.2d 753, § 21. See Black v. Jackson, 177 U.S. 349, 363, 20 S.Ct. 648, 44 L.Ed. 801 (1900); Ambassador Foods Corp. v. Montgomery Ward & Co., 43 Ill.App.2d 100, 192 N.E.2d 572, 575 (1963); Allen v. Hotel & Restaurant, etc., Alliance and Bartenders' International League of America, 97 Cal.App.2d 343, 348–349, 217 P.2d 699 (1950).

In Ward Baking Co. v. Oak Park Baking Co., 278 F. 627 at page 628 (D.Del. 1922) the court said:

> "The injury done to the rights, if any, of the complainant, cannot be materially aggravated or extended in the interim. If, however, a preliminary injunction issue, the defendant would be required to change its cartons, the inscription on its wagons, and its mode of advertising, which would probably be productive of great and irreparable injury to the defendant, should it be ultimately determined that the complainant is without right to the relief it seeks."

■ Although in the development of equity jurisprudence, courts presently have less hesitancy than in years gone by to grant mandatory injunctions, the opinion expressed above still seems timely on this application for a preliminary injunction. As noted earlier, it is questionable whether plaintiff is suffering an injury by the operation of defendant's business. Even if plaintiff's business is affected adversely, the effect of requiring plaintiff to wait until the trial on the merits appears to be minimal compared to the damage which may be caused by the granting of a preliminary injunction. What is not questionable is that the issuance of a preliminary injunction would destroy substantially the business efforts and good will of defendant. If injunctive relief is granted, defendant would find it necessary to change its name as that name appears on all of its advertising material menus and other business papers and defendant would be compelled to operate under another name, thereby forfeiting whatever good will it has developed during the past years. In light of the uncertainty of plaintiff's case, there appears to be no justification for the granting of the extraordinary remedy of a preliminary injunction.

## II

Plaintiff also applies for a preliminary injunction for an alleged infringement of its trade name as protected by California Business & Professions Code, secs. 14205, 14400, 14402, and 14330. Section 14330 provides:

> "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, shall be ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

■ We find that this statute will not sustain the plaintiff's prayer for a preliminary injunction because: (1) it does not distinguish between preliminary and final injunctions, and therefore should not be construed to dispense with the requirement of a strong showing to obtain a preliminary injunction based upon the evidence submitted to the court at that time which is prior to trial on the merits, and (2) even if applicable, for the reasons discussed above, we find neither likelihood of injury to business reputation nor any dilution of the distinctive quality of the plaintiff's trade name. The determination of these elements need only be made upon the trial on the merits. The equitable considerations heretofore discussed still apply in determining whether or not it is appropriate for a court of equity to grant the preliminary injunction requested by plaintiff in a situation such as exists in this case.[13] Clearly, the equities balance heavily in

13. Until this statute is interpreted more fully by a California court, we feel constrained not to give it overly broad application lest it swallow up all competition in the claim of protection against trade name infringement.

favor of defendant and for that reason and others referred to earlier in this opinion the court is persuaded that plaintiff's application for a preliminary injunction should be denied and it is so ordered.

The foregoing will constitute the findings of fact and conclusions of law pursuant to Rule 52(a) F.R.Civ.P.