**AIRWICK INDUSTRIES, INC.,**
**Plaintiff,**

v.

**ALPKEM CORPORATION, Defendant.**

**Civ. No. 72–755.**

United States District Court,
D. Oregon.

Sept. 11, 1974.

**1028**

Don S. Willner, Portland, Or., Raymond D. McMurray, Washington, D. C., for plaintiff.

Carlton W. Hodges, Joseph B. Sparkman, Portland, Or., for defendant.

## OPINION

BURNS, District Judge:

Plaintiff Airwick, a New York corporation primarily engaged in the manufacture of odor counteractants, seeks an injunction [1] against Defendant Alpkem, an Oregon corporation which began business in 1969 making and selling chemical reagents for automated blood testing devices. Plaintiff alleges trademark infringement and false designation of origin of products in violation of the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051–1127; dilution of trademark and trade name as prohibited by Oregon's recently enacted anti-dilution statute, O.R.S. 647.107; and the common law tort of unfair competition. This Court has jurisdiction by virtue of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338(a) and (b).[2] The facts central to this controversy are not basically in dispute.

### I.

### FINDINGS OF FACT

From its inception in 1939 as a partnership named *Airox* Company, Plaintiff's name has been associated with products for purifying the air. Use of the word "air" as the common denominator of plaintiff's products is shown by the evolution of both its business and its name. In 1941, Plaintiff was incorporated as *Airkem* Corporation; two years later, Plaintiff became *Airkem*, Inc.,; another consolidation in 1946 retained the same name; in 1968,

---

1. Plaintiff abandoned its claim for damages, punitive or otherwise. Plaintiff's Trial Brief, pp. 4, 5.

2. It is unnecessary for me to determine Defendant's claim that 28 U.S.C. §§ 1331 and 1332 do not provide jurisdiction.

Plaintiff finally changed to its present name, *Air*wick Industries, Inc., establishing two divisions: *Air*kem, which sells commercial odor counteractants and disinfectants[3] to institutions, government agencies and private businesses; and the *Air*wick Brands Division, selling consumer products for home use.

Plaintiff has three registered trademarks using the name *"Air*kem," the first of which was issued in 1940 for an air deodorant, and a stylized "A" design[4] issued in August 1969 for disinfectant and odor counteractant spray.[5]

Defendant's business began in January 1967 as a partnership of two young chemists, Michael D. Armstrong and George M. Lizer, making reagents for automated blood testing machines. Using the first letter of their surnames, they called their firm A & L Medical Testing Solutions. In early 1969, these two were joined by a third person, Raymond L. Pavitt. Pavitt soon suggested the adoption of a "catchy" name using the initials of the principals' surnames —A, L and P—combined with a common suffix in the industry, "KEM." Defendants were personally unaware of Plaintiff or its marks or designs.

While doodling, in trying to design a symbol for the corporation, Pavitt kept on drawing nondescript triangles (representing alternatively the three founders or a mountain-like shape symbolizing the "Alp" in the proposed new name). A local printer transformed Pavitt's doodle into two triangles within a triangle made with one continuous line, which bears considerable similarity to Plaintiff's stylized "A."[6] The similarity is enhanced by the fact that both are printed in green ink on white boxes for delivery of their respective products to hospitals.[7] Plaintiff's use of lower case letters as contrasted with Defendant's capitals is relatively insignificant.

It is the similarity between the words Airkem and Alpkem (in the same colors) plus the close resemblance in the stylized A of Plaintiff and the triangular design of the Defendant, absent any competition or any attempt to "palm off" Defendant's goods as those of Plaintiff, which gives rise to this lawsuit. Defendant has never sought to trade on Plaintiff's reputation. Indeed, a preponderance of the evidence produced at trial shows that potential purchasers from Defendant in hospital laboratories are personally approached by Pavitt (or sometimes, Armstrong). They clearly identify Alpkem with the "three bright young men" in Portland, Oregon. Airwick's Airkem Division has developed its hospital clientele in the same way, by individually contacting the people responsible for ordering disinfectants and other products from various other institutional departments. Plaintiff and Defendant advertise in separate industrial publications; Plaintiff widely displays its wares at the trade shows, while Defendant does not.

The only instances of actual confusion shown occurred during a brief period in 1972–73 in Salt Lake City, Utah (where both parties had distributors called Air-

---

3. As well as disinfectants, insecticides and sanitary maintenance products containing an odor counteractant feature. In addition, it sells smoke and odor removal services.

4. Appended to this Opinion, as Exhibit A, is a copy of Plaintiff's design as it appears on a typical container which is a trial exhibit.

5. Up to this point, emphasis has been supplied to the "Air" portion of the names used.

6. Appended, as Exhibit B, is a copy of Defendant's design as it appears on a typical container which is also a trial exhibit.

7. The reproductions (Exhibits A and B to this Opinion) are, of course, colorless. The coincidental resemblances, as I am convinced these are, more than likely result from a common school of thought among graphics designers rather than any conscious copying by competitors. If Defendant had chosen, for instance, red or orange for its ink instead of green, the common elements would not be as readily noticeable.

kem Intermountain and Alpkem Intermountain),[8] and in Portland, Oregon, location of both Defendant's home office and one of Plaintiff's distributors. The errors were either billing or mailing mistakes made by clerks unfamiliar with either corporation or its products. As far as was known at the time of trial, the sophisticated purchasers who designate brands to be ordered in various technological departments have never been confused as to the source of Airwick or Alpkem products.

In addition to the above claims of confusion, Plaintiff also expressed concern about Defendant's alleged lack of control over the quality of goods handled by Alpkem franchisees. Defendant now has only one American franchisee, located in Midland, Michigan, and is well aware of the need to set firm standards for people supplying merchandise bearing the company name. The evidence indicated that Alpkem is highly regarded in the field and has been prospering due to its growing reputation for reliability in the last five years.

Plaintiff's Airkem Division had 6,138 customers in its branch sales offices as of August 1973. Plaintiff's franchised distributors had in excess of 37,600 customers as of September 30, 1973. Of these 43,738 customers, a total of 65 customers were also dealing with Defendant. For three of these common customers, the same individual was identified as the contact person for both Plaintiff and Defendant. As of June 1973 Defendant had 221 customers in all.

## II.

### CONCLUSIONS OF LAW

#### A. *Trademark Infringement*

■ Actions for trademark infringement (and its siblings—unfair competition and dilution) involve difficult judicial determinations, the central one of which is whether the consumers or users of the goods or services thus identified are likely to be confused between those goods or services or deceived as to their source. Our Circuit, very recently, has described in a striking manner the problems which confront lawyers and judges and their consumers in this field of law:

"Trademark infringement is a peculiarly complex area of the law. Its hallmarks[9] are doctrinal confusion, conflicting results, and judicial prolixity. The source of this difficulty is that each case involves an effort to achieve three distinct objectives which, to a degree, are in conflict. These are: (1) to protect consumers from being misled as to the enterprise, or enterprises, from which the goods or services emanate or with which they are associated; (2) to prevent an impairment of the value of the enterprise which owns the trademark; and (3) to achieve these ends in a manner consistent with the objectives of free competition. The third objective dictates a degree of restraint in the pursuit of the first two; the second can be pushed beyond the reasonable needs of the first; and each requires for its proper implementation the exercise of judicial intuition supported, to the extent possible, by relevant facts. This case is no different from its kind, and we approach it with a keen awareness of its difficulty and our peril." HMH v. Brincat, (9th Cir. 1974) 504 F.2d 713.

But our Circuit has set out some sidelines and goalposts for District Court guidance as to the relevant criteria.

". . . the area of concurrent sale; the extent to which the goods are related; the extent to which the mark and the alleged infringing name are similar; the 'strength' or novelty of the plaintiff's mark; evidence of bad faith or intention of the defendant in selecting and using the alleged infringing name; and evidence of ac-

---

8. The Alpkem Intermountain franchisee went out of business in June 1973.

9. I lay no claim by this Opinion to have escaped entry into this unenviable hallmark hall of (in) fame.

tual confusion." Paul Sachs Originals Co. v. Sachs, 325 F.2d 212 (9th Cir. 1963).

" . . . visual, verbal and intellective similarity; the class of goods in question; the marketing channels; the intent of defendant; evidence of actual confusion; and the strength or weakness of the marks in question." Carter Wallace v. Procter & Gamble, 434 F.2d 794, at 800 (9th Cir. 1970). See also Lerner Stores v. Lerner, 162 F.2d 160 (9th Cir. 1947).

In applying the above test to *Sachs* facts, the Court of Appeals affirmed dismissal of the suit, even though the parties were engaged *in identical* business ventures (dress manufacture) and dealt with the same general class of purchasers. The Court found that the two names "Paul Sachs Originals" and "Sachs of California" were different enough so as not to lead to confusion of a typical dress-buyer, especially since they appeared on the labels of two different size lines of clothes.

In the decade since the *Sachs'* decision, the courts in this Circuit have repeatedly rejected trademark infringement claims in cases where the parties were much more closely associated in the public mind than are Airwick and Alpkem. See K–S–H Plastics, Inc. v. Carolite, Inc., 408 F.2d 54 (9th Cir. 1969) [manufacturers of plastic lighting panels]; Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler, 305 F.Supp. 1210 (N.D.Cal.1969) [both restaurants]; Carter-Wallace, Inc. v. Procter & Gamble Company, 434 F.2d 794 (9th Cir. 1970) [both personal deodorant marketers]; Redken Laboratories, Inc. v. Clairol Incorporated, 350 F.Supp. 1301 (C.D.Cal. 1972) [both in hair-cosmetic trade];

HMH Publishing Co., Inc. v. Lambert, 482 F.2d 595 (9th Cir. 1973) [both operators of "Playboy" and "Playgirl" nightclubs].

With respect to the strength or weakness of Plaintiff's stylized A and combination of the names "Air" and "kem" into "Airkem," I am convinced that the stylized A or triangular mark is particularly weak [10] and the combination name is only slightly less weak. Plaintiff's chosen name is descriptive—"Air" for the odor reactant aspect of its business, and "kem" to connote the use of chemicals as odor reactants, disinfectants, etc. This sort of non-whimsical association is entitled to only limited legal protection. Nor was there at the trial a preponderance of evidence that would justify a finding or conclusion of secondary meaning that produces, legally, a likelihood of confusion.

Defendant's exhibits at trial (see F.N. 10) showed catalogues and advertising from companies such as AIRCO and ALCAN which capitalize on the common name associations and the not uncommon—indeed, almost universal—triangular design. As Judge Levin remarked in the *Coffee Dan* case, supra:

" . . . it is patent that no such unique, fanciful or arbitrary name is involved. 'Coffee' is hardly an unusual adjective in a restaurant's name, and defendant states in his affidavit that 'Don's' in 'Coffee Don's' derives from the first name of the establishment's original owner . . . " *Id.*, 305 F.Supp. at 1215–1216, citing Stork Restaurant v. Sahati, 166 F.2d 348 (9th Cir. 1948), and Friend et al. v. H. A. Friend and Company, Inc., 416 F.2d 526 (9th Cir. 1969).

10. The *record itself* (Exhibit 360—excerpts from Portland, Oregon, Telephone Directory "Yellow Pages;" Exhibits 335–337—magazine advertising; and Exhibit 359—a brochure) shows use of the triangular mark by Airco—a company producing industrial gases —and Allis Chalmers, with its various well-known products. I myself have seen substantially similar triangular marks on casual driving through the Portland area, e. g. Ace Electric (electrical contractors) and Associates (financial services). I would be surprised if careful scrutiny of the "yellow pages" did not produce a host of other companies whose advertising is tied to a triangle.

■ Furthermore, although scienter is not an element in an action for infringement violation, Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149 (9th Cir. 1963), I am of the opinion that the absence of any "palming off" in this case, and Defendant's lack of awareness of Plaintiff's Airkem Division, much less its identifying marks, should be taken into account. See *Paul Sachs Originals Co.,* supra, 325 F.2d at 215; King Research, Inc. v. Shulton, Inc., 454 F.2d 66 (2 Cir. 1972).

Finally, Plaintiff points to the events of actual confusion as evidence of the "plain fact" that an infringement has occurred. Two significant aspects in this case leave me unpersuaded by this line of argument: (1) as a Ninth Circuit panel observed in similar circumstances, it is the *customers* who must be confused, and this "must be demonstrated by more than merely an occasional misdirected letter. The showing of a mere trace of confusion is insufficient." Everest & Jennings, Inc. v. E & J Mfg. Co., 263 F.2d 254, 260 (9th Cir. 1958), citing Sunbeam Lighting Co. v. Sunbeam Corp., 183 F.2d 969 (9th Cir. 1950); S. C. Johnson & Son, Inc. v. Johnson, 175 F.2d 176 (2 Cir.), cert. denied, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949); in the case at bar, the confusion was amongst clerical and billing, not buying personnel; and (2) out of almost 44,000 of Plaintiff's customers, only 65 also deal with Defendant. Moreover, even among the common purchasers, the people who requisition the hospital supplies are different—generally, Plaintiff's products are selected by the housekeeping department and Defendant's are specified by a medical technologist in the lab. Hence, even though these orders are then usually processed by the hospital purchasing agent, the buyers are professionals in their fields who are not likely to be confused or deceived. See Polaroid Corporation v. Polarad Electronics Corp., 182 F.Supp. 350, 354 (E.D.N.Y.1960), 287 F.2d 492, 495 (2 Cir. 1961); American Law institute, Restatement of Torts, §§ 729–31.

■ Therefore, I conclude on the basis of a preponderance of the evidence produced and a balancing of the equities involved, as I must in applications for injunctive relief, that Plaintiff's claims under 15 U.S.C. §§ 1114(1) and 1125(a) fail.

### B. *Unfair Competition*

■ In light of the above findings, together with the parties' agreement that there is no actual competition between them, and, further, because there is no evidence that Plaintiff has lost sales because of any activities of Defendant, the unfair competition claim likewise fails.

### C. *Oregon's Anti-Dilution Statute*

O.R.S. 647.107 provides:

*"Grounds for injunctive relief.* Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under ORS 647.015, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

■ In order for something to be diluted, it must be distinctive. And, as already noted, I am of the opinion that the trademark and name at issue are particularly undistinctive. Furthermore, the Court of Appeals for this District has been restrictive in construing an identical statute in California, Cal. Bus. & P.Code § 14330, both before and after Oregon's adoption of it in 1971.

In the *Carter-Wallace* case, supra, even though the Plaintiff submitted evidence of a national survey indicating that approximately one out of every four consumers questioned associated its mark "ARRID" with the slogan "To Be Sure," the Ninth Circuit held that the absence of evidence concerning confusion between Defendant's brand "SURE" and

the sources of the two products was enough to uphold the District Court's denial of relief. While noting that a Seventh Circuit case, Polaroid Corp. v. Polaraid, Inc., 319 F.2d 830, 837 (1963), had found that an anti-dilution statute could go beyond the common law protection afforded in unfair competition theory "by dispensing with the need for showing likelihood of confusion," *Carter-Wallace, supra,* 434 F.2d at 803, this Ninth Circuit panel agreed with the District Court that the marks involved here were so common in the industry that the Plaintiff could not make out *any* dilution claim. The *Coffee Dan* case was cited as an instance of lower courts having:

" . . . [refrained from giving the California statute an] overly broad application 'lest it swallow up all competition in the claim of protection against trade name infringement.' " Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler, 305 F.Supp. 1210, 1217 n. 13 (D.C.1969).

■ I conclude under the facts in this case that the descriptive syllables "Air" and "kem" and the triangular "A" in this case are similarly weak so as not to deserve judicial enforcement of their exclusive use by Plaintiff, at least by forbidding Defendant from using its name and triangular mark. Both parties here solicit accounts through personal contact with purchasers—Plaintiff is known for its high quality merchandise in air purifiers and Defendant is known in a comparable fashion for its fine professional production of blood testing materials. Defendant's already-attained stature in its field makes any injury to Plaintiff's business reputation highly unlikely. See King Research, Inc. v. Shulton, Inc., 324 F.Supp. 631, 639 (S.D.N.Y.1971), 454 F.2d 66 (2 Cir. 1972).

Recently, the Ninth Circuit again had occasion to consider a dilution claim in conjunction with a trademark infringement case. Plaintiff sought protection for the use of "Playboy," "The Playboy Club," and "Playmate;" the Defendant

promoted and operated nightclubs under the names "Playgirl," "Playgirl Club" and "Playgirl Key Club." Because the substantive details of the Defendant's business were readily distinguishable from the Plaintiff's, the district court's decision in favor of the Defendant on all counts was affirmed. In rejecting the Plaintiff's dilution theory, the Court concluded:

"We have been shown no cases which have afforded protection under the California statute in circumstances such as those before us now; we agree with the district court that plaintiffs are not entitled to relief under any theory of dilution." *HMH Publishing, supra,* 482 F.2d at 599.

Nor does a reading of the even more recent *Brincat* case convince me that our Circuit would grant Plaintiff relief on its anti-dilution claim.

D. *Abandonment*

Defendant has affirmatively responded to Plaintiff's allegations by contending that Airwick effectively abandoned four of its trademark registrations, including the word "Airkem" with its old logo of a flask, trees and a drop of liquid, when it made Airkem simply a division and adopted the "Stylized A." 15 U.S.C. § 1127 provides:

"A mark shall be deemed to be 'abandoned'—(a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from the circumstances. Nonuse for two consecutive years shall be prima facie abandonment."

■■ Relying upon 15 U.S.C. § 1064 which provides for cancellation of abandoned marks, Defendant has petitioned this Court to direct the Commissioner of Patents to cancel Plaintiff's registrations Nos. 731,945, 734,389, 739,010 and 740,757, pursuant to 15 U.S.C. § 1119. Abandonment requires an intent to give up rights in the mark, which Plaintiff has demonstrably not done. I am convinced that Plaintiff's rights to these marks, such as they may remain, are still intact.

E. *Conclusion*

Accordingly, Plaintiff's application for injunctive relief is hereby denied. Neither party shall recover costs.

This Opinion shall serve as findings of fact and conclusions of law in accordance with provisions of F.R.Civ.P. 52.

Defendant shall prepare an appropriate form of judgment.

## EXHIBIT A