DEVLIN v. McLEOD.

(Circuit Court, W. D. New York. December 22, 1904.)

1. TRADE-MARKS—WORDS INDICATING QUALITY.

The words "Toothache Gum," used to designate a medicinal preparation for the relief of toothache, were suggestive of the ailment and its probable cure, and designated quality, rather than the origin or ownership of the article, and were therefore not subject to appropriation as a technical trade-mark.

[Ed. Note.—Arbitrary, descriptive, or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.]

2. SAME—UNFAIR COMPETITION—FRAUD.

Where, in a suit for unfair competition, it was apparent that confusion was likely to arise because of defendant's imitation of plaintiff's package, an intent to defraud would be presumed.

[Ed. Note.—Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper, 30 C. C. A. 376.]

3. SAME—EVIDENCE.

In a suit to restrain defendant from alleged unfair competition in the sale of "Toothache Gum" in packages similar to complainant's package, evidence *held* to show such a similarity as to entitle complainant to an injunction.

4. SAME—LACHES.

Where complainant, the original manufacturer of "Dent's Toothache Gum," had no knowledge of defendant's use in the United States or elsewhere of the words "Royal Toothache Gum" to designate his commodity until 1902, and plaintiff brought suit promptly thereafter to enjoin such use, and to restrain defendant from selling his commodity in packages similar to complainant's packages, complainant was not barred from relief by laches.

[Ed. Note.—Laches as a defense in suits for infringement of trade-mark or trade-name, see notes to Taylor v. Spindle Co., 22 C. C. A. 211; Richardson v. D. M. Osborne & Co., 36 C. C. A. 613.]

5. SAME—INJUNCTION—DAMAGES.

Where, in a suit for unlawful competition, the gist of the action was defendant's use of a label similar to that used by complainant, the fact that defendant's use thereof at the time suit was brought had been inconsiderable did not warrant the refusal of an injunction, though the use was insufficient to entitle complainant to an accounting.

In Equity.

Forbes & Haviland (Charles T. Haviland, of counsel), for complainant.

Frank Gibbons, for defendant.

HAZEL, District Judge. Complainant seeks to restrain the defendant from using the words "Toothache Gum" in the sale of an article to alleviate or cure pain in a tooth. A technical trade-mark right is claimed by complainant in the words mentioned. The bill also charges unfair competition in trade, by imitating the dress and style of complainant's package. The facts, though in conflict, tend to show that complainant began the manufacture of Dent's Toothache Gum in Toronto, Canada, in 1886, and that the same has been sold in the United States since 1889 or 1890. The article is contained in a two-drachm vial wrapped

in an orange-color label. Upon the label is printed in plain black type the words:

"Dent's Toothache Gum. Stops toothache instantly. Will not run or spread in the mouth. This is not a chewing gum. Directions on inside label. Sole proprietors C. S. Dent & Co., Detroit, U. S. A."

This form and size of package, style and color of label and type, have been continuously used by complainant, without change, except that the words "London, England," were added in 1897. The defendant also manufactures and sells a toothache gum similarly put up, in vials of the size and shape, color of label, style and color of type, and general appearance, of complainant's package; using, however, the words "Royal Toothache Gum" to attract attention to his vendible goods. The label also has printed thereon the words:

"Stops toothache at once. An insoluble gum or wax. Will not burn the mouth. Full directions on label. Made by The J. Bell McLeod Medicine Co., Buffalo, N. Y."

The opaque profile of a man's face has occasionally been printed upon some of the labels used by defendant. It is admitted, however, that a label having printed upon it the silhouette figure mentioned has not been largely used, and accordingly no attention need be given to this form of label. The defendant began the manufacture of his commodity in 1893 or 1894. He claims the term "Toothache Gum" originated with one Gibbons, who began the manufacture of a similar article in 1888, and placed the same on the market in packages similar to those used by complainant, except as to color of label. It sufficiently appears, however, that complainant's adoption of the name and the character of the label used in the United States was prior to that of defendant or any other person. Assuming, therefore, that the complainant was the first to adopt the name and style of dress, the first question is whether he has an exclusive proprietary right to appropriate the term claimed as a trade-mark, in the absence of fraud and deception. The rule is unassailable that the use of words, letters, or symbols as a mere indicia to the quality, class, and character of style of the vendible goods to which they are affixed, cannot be adopted as a valid trade-mark. Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Barrett Chemical Co. v. Stern, 176 N. Y. 27, 68 N. E. 65. The common words "Toothache Gum" are certainly suggestive of the ailment, and its probable cure by the use of the medicated application to the painful tooth or gums. Their adoption denotes the character of the article sold, and its efficiency as a curative medicinal preparation, rather than origin or ownership, and hence they are not entitled to protection as a technical trade-mark.

As to unfair competition: The law of unfair trade is thus comprehensively stated by Judge Coxe in Hilson Co. v. Foster et al. (C. C.) 80 Fed. 896:

"No man has a right to use names, symbols, signs, or marks which are intended or calculated to represent that his business is that of another. No man should in this way be permitted to appropriate the fruits of another's industry, or impose his goods upon the public by inducing it to believe that they are the goods of some one else."

The general rule governing this class of cases is stated by the Supreme Court as follows:

"If the form, marks, contents, words, or the special arrangement of the same, or the general appearance of the alleged infringer's device, is such as will be likely to mislead one in the ordinary course of purchasing the goods, and induce him to suppose he was purchasing the genuine article, then the similitude is such as entitles the injured party to equitable protection."

McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 549, 11 Sup. Ct. 396, 34 L. Ed. 997; Coats v. Merrick Thread Co., supra.

The application of this rule, based upon a fair inference drawn from the evidence, would seem to establish that the defendant, by fraud and deception, palmed off his article for that of complainant. True, fraud, in cases of unfair competition, is the essence of the relief sought, and should be clearly proved; but where a similarity of style and color of label and type, size of package, spacing, and marginal lines, when collocated, is present, the existence of a wrongful intention in a case like this is persuasive. Moreover, when it is apparent that confusion is likely to arise because of the imitation and resemblance, an intent to deceive may be presumed. There is no conclusively direct evidence that confusion has resulted from the similarities pointed out, nor is there evidence of actual sales of one product for the other, or even of a mistake of one for the other, or any representation of palming off the toothache gum of the defendant for that of the complainant. Nevertheless, by the adoption of the collocated prominent features found in complainant's label and style of dress, an attempted deception is shown, and no such differentiation in the vendible goods of the defendant exists as to warrant a denial of the protection of a court of equity. The pertinent rule is plainly stated in Collinsplatt v. Finlayson et al. (C. C.) 88 Fed. 693, as follows:

"Nor do these courts [i. e., federal] require specific proof of purchases by individuals actually deceived, when the labels themselves show an attempt at deception which appears to be well-calculated to deceive." And again: "Inspection of the labels must carry conviction to any unbiased and intelligent mind that the later label was prepared by some one who had seen the earlier one, and that it was designed, not to differentiate the goods to which it was affixed, but to simulate a resemblance to complainant's goods sufficiently strong to mislead the consumer, although containing variations sufficient to argue about, should the designer be brought into court."

In the recent case of Enterprise Mfg. Co. v. Landers, Frary & Clark, 131 Fed. 241, the Circuit Court of Appeals for this circuit states the rule in these words:

"A court of equity will not allow a man to palm off his goods as those of another, whether his misrepresentations are made by word of mouth, or, more subtly, by simulating the collocation of details of appearance by which the consuming public has come to recognize the product of his competitor."

The principal words on the label of the defendant are very much the same as those on complainant's label; the vials are practically the same size—the defendant's but one-half drachm larger; the gum in the vial emits a similar medicinal odor; and the size of the lettering, the color of the ink and labels, are certainly similar. As has been stated, the figure of the man's face upon the defendant's label is only occasionally

used. From its omission upon the labels principally used, or its entire abandonment—a fact which may be inferred from the testimony—an intent to enhance the similarity to complainant's packages may be presumed. Furthermore, it is admitted that in February, 1902, the defendant put up an article called "Bent's Toothache Gum," in form and size of vial, color of label, size and style of type, in imitation of complainant's package. Upon this point defendant testifies that the packages in question (about one gross in amount) were manufactured under his supervision at the request of one Bent. Although the production of the label having the name "Bent" printed upon it, in imitation of the name "Dent" on complainant's label, has been discontinued, the issuance of such label is thought to have some bearing upon defendant's intent to imitate complainant's article, which the evidence shows has been widely advertised.

Defendant contends that the doctrine of laches has application. Complainant had no knowledge of the use in the United States or elsewhere by defendant of the words "Royal Toothache Gum" to designate his commodity until some time in the year 1902, and it is thought, therefore, that laches will not bar complainant's relief, especially as the action was promptly brought. Moreover, the use by defendant of the yellow label, size and style of vial and type complained of, which is the gist of the unfair trade feature of this controversy, has been inconsiderable; and hence the refusal of a decree of injunction is not warranted, though no case for an accounting is presented. Rahtjen's Am. Composition Co. v. Holzappel's Composition Co., 101 Fed. 257, 41 C. C. A. 329; Menendez v. Holt, 128 U. S. 524, 9 Sup. Ct. 143, 32 L. Ed. 526.

A decree may be entered, without costs, enjoining the defendant from the use of the words "Toothache Gum" in connection with a style of type similar to that used by complainant on a label of the same or similar color as that of complainant, and also enjoining the use of the word "Bent" in connection with such style of packages as herein described. So ordered.