434 F.2d 794
 167 U.S.P.Q. 713
 CARTER-WALLACE, INC., a corporation, Appellant,
v.
The PROCTER & GAMBLE COMPANY, The Procter & Gamble
Distributing Company, the Procter & Gamble
Manufacturing Company, A.B.C. Market
Corp., and Oliver Drug
Company,
corporations,
Appellees.
 No. 25280.
 United States Court of Appeals, Ninth Circuit.
 Nov. 10, 1970.
 
 1
 Warren L. Kern, Richard A. Wallen, of Harris, Kiech, Russell & Kern, Los Angeles, Cal., Louis Kunin, and V. T. Giordano, of Von Maltitz, Derenberg, Kunin & Janssen, New York City, for appellant.
 
 
 2
 Richard E. Sherwood, Ralph W. Dau of O'Melveny & Myers, Los Angeles, Cal., Thomas S. Calder and John E. McDowell, of Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for appellees.
 
 
 3
 Before HAMLEY and KILKENNY, Circuit Judges, and LEVIN,* District judge.
 
 
 4
 GERALD S. LEVIN, District Judge.
 
 
 5
 This is an action for unfair competition and common law trademark infringement arising from defendant's[1] alleged infringement of plaintiff's[2] personal deodorant slogan, 'Use ARRID * * * To Be Sure' and its variant, 'To Be Sure,' used in connection with plaintiff's advertising of its personal deodorant under the trademark ARRID.
 
 
 6
 Plaintiff's Amended and Supplemental Complaint sought to enjoin defendant from marketing a personal deodorant under an allegedly confusingly similar trademark, SURE. Jurisdiction of the District Court was based on diversity of citizenship (28 U.S.C. 1332) and was not contested below.
 
 
 7
 Defendant counterclaimed for declaratory relief and to enjoin plaintiff's alleged infringement of the federally registered trademark SURE for personal deodorant through plaintiff's recent use of the trademark SAFE 'N SURE for a similar product. Plaintiff thereafter counterclaimed for cancellation of said SURE registration.
 
 
 8
 The case was tried without a jury, and the District Court entered a judgment for defendant on all counts of the complaint, dismissing plaintiff's Amended and Supplemental Complaint and its counterclaim and sustaining defendant's counterclaims. This appeal was thereupon perfected.
 
 
 9
 The District Court's Findings of Facts may be summarized fairly as follows:
 
 
 10
 Plaintiff has manufactured and sold ARRID in interstate commerce since 1936. Beginning about 1947 ARRID was advertised with the slogans 'Don't Be Half-Safe,' alone or in conjunction with 'Use ARRID To Be Sure' or 'Be ARRID Safe-- Use ARRID To Be Sure.' This approach was followed until at least 1953. The principal emphasis of plaintiff's advertising during this period was placed on 'Don't Be Half-Safe,' and this was the dominant part of its slogans.
 
 
 11
 Subsequent to 1953, plaintiff used the 'Don't Be Half-Safe' theme with less regularity, although it was reintroduced into television advertising as late as 1964. 'Use ARRID To Be Sure' and its variants were used frequently but often with significant omissions.
 
 
 12
 No use was made of the 'Use ARRID To Be Sure' slogan in 1957-1960 and 1960-1962. No use was made of this slogan in the test market and introductory stage of the successful ARRID Extra-Dry deodorant, nor in the case of other less important ARRID products.
 
 
 13
 Beginning about 1950, plaintiff used 'Don't Be Half-Safe' and later 'Don't Be Half-Safe, Be Completely Safe' on the packaging of its ARRID cream deodorant. The words 'Use ARRID To Be Sure' also appeared, but less prominently. This package style continued through 1955, after which 'Don't Be Half-Safe' was discontinued. Plaintiff continued to use the words 'Use ARRID To Be Sure' on the side panel of substantially all of its cream deodorant packaging.
 
 
 14
 The second major product form of ARRID deodorant, a roll-on, was introduced in 1957, but the words 'Use ARRID To Be Sure' were not used in the packaging of this product until 1964.
 
 
 15
 In about 1964 plaintiff introduced an aerosol spray form of ARRID deodorant. No consistent pattern was followed regarding the use of 'Use ARRID To Be Sure' or variants on spray containers. In 1967-68 plaintiff introduced an antiperspirant spray called ARRID Extra-Dry Spray. No use was made of 'Use ARRID To Be Sure' on the containers of this product until May, 1968, when it was placed in small print on the back of the container.
 
 
 16
 No combination of words used by plaintiff containing 'sure' (or the word 'sure' alone) functioned as a trademark for plaintiff's deodorant products, such products being identified at all times by the ARRID trademark. 'Use ARRID To Be Sure' functioned as a product claim and as a description of the characteristics of the product rather than as an indication of the origin of the product.
 
 
 17
 During the period in which plaintiff used 'Don't Be Half-Safe' on its packaging in conjunction with 'Use ARRID To Be Sure,' plaintiff did not regard the latter as a separate trademark or slogan. Plaintiff obtained a federal registration of 'Don't Be Half-Safe' in 1951, and obtained registration of several additional deodorant trademarks, but failed to seek registration of 'Use ARRID To Be Sure' until 1964, on the eve of its dispute with defendant.
 
 
 18
 The words 'To Be Sure' were not used apart from 'ARRID To Be Sure' or 'Use ARRID To Be Sure' as a separate slogan either before or after 1953. No slogan or combination of words that included the word 'sure' served to identify or distinguish plaintiff's deodorant products either before or after 1953.
 
 
 19
 The word 'sure' has been used in slogans or copy by other sellers of deodorants and deodorant soaps both on packaging and in media advertising. Some of these uses predated plaintiff's, and these uses were known to plaintiff when it commenced its own advertising techniques. Uses of 'sure' to convey a selling message similar to plaintiff's occurred both before and after 1953.
 
 
 20
 Despite plaintiff's extensive advertising of ARRID deodorant, the evidence at trial failed to show a significant degree of consumer association or identification of any slogan including the word 'sure' with plaintiff or with ARRID deodorant in either the pre- or post-1953 period.
 
 
 21
 Defendant's rights stem from the commencement of marketing personal deodorant products by Lexicon, Products, Inc. (hereinafter 'Lexicon') in January, 1953, using the trademark SURE. Lexicon also used the slogan 'Be Sure With SURE' on deodorant containers and in much of its advertising. Lexicon sold SURE on a relatively small scale but did so continuously between 1953 and 1964.
 
 
 22
 Lexicon federally registered the trademark SURE based on an application filed in February, 1957. The application was published for opposition in April, 1958. Plaintiff did not oppose this application, but an opposition was instituted by McKesson & Robbins, Inc. Lexicon prevailed before the Trademark Trial and Appeal Board, and its registration was issued March 28, 1961.
 
 
 23
 Plaintiff made no objection to the sale of SURE deodorant by Lexicon, although it appears that plaintiff had notice of Lexicon's claim of ownership.
 
 
 24
 Defendant considered the name SURE for a personal deodorant product in about 1954. Defendant thereafter discovered Lexicon's claimed ownership of the mark and concluded that the mark was preempted. On two occasions, in 1956 and 1958, defendant communicated with Lexicon regarding possible assignment of the mark, but in both instances Lexicon failed to respond because of its lack of interest in parting with the SURE trademark.
 
 
 25
 In 1963 defendant was asked to sell its trademark CONTACT to Smith, Kline & French, Inc., which was marketing cold remedies under the mark CONTAC. After negotiation, defendant agreed to exchange its CONTACT mark for the SURE mark if it could be obtained from Lexicon. Smith, Kline & French, Inc., acting through an intermediary, arranged for the acquisition of the SURE mark from Lexicon. On February 25, 1964, Lexicon assigned its rights and federal registration of SURE to defendant (Prior to that date, Lexicon was not aware that defendant was the intended assignee.)
 
 
 26
 Unknown to defendant, negotiations for the sale of the SURE mark had occurred between Lexicon and International Latex Corp. prior to February 25, 1964. Shortly after the assignment to defendant, International Latex made a claim against Lexicon and defendant based on an alleged prior contract with Lexicon for acquisition of the SURE mark. When defendant would not accede to this claim, International Latex commenced suit in federal court against defendant Lexicon and principals of Lexicon. This action continued until March, 1968, when the parties resolved the dispute by an agreement under which International Latex relinquished all claims to the SURE mark.
 
 
 27
 During the period of the above litigation and thereafter defendant sold deodorant products with the mark SURE, albeit in small quantities. Defendant has not advertised or promoted SURE deodorant other than by listing the product in trade directories. Defendant's sales of SURE deodorant were not made for profit but for the purpose of continuing the business acquired from Lexicon so that the SURE mark would be available for use on a major advertised product when the legal problems posed by the International Latex litigation and the instant case were resolved.
 
 
 28
 In August, 1964, shortly before its letter of protest to defendant, plaintiff had filed an application in the United States Patent Office to register 'Use ARRID To Be Sure.' The trademark examiner rejected the application for reasons including conflict with defendant's SURE registration. Plaintiff's House Counsel asserted that there was no likelihood of confusion between 'Use ARRID To Be Sure' and SURE.
 
 
 29
 In October, 1965, plaintiff filed a second application, and again asserted that confusion was unlikely between its 'Use ARRID To Be Sure' and SURE. This second application was withdrawn by plaintiff shortly before the commencement of the instant action.
 
 
 30
 As to the use of SAFE 'N SURE under defendant's counterclaim, defendant had priority of use and plaintiff has conceded that concurrent use of SURE with plaintiff's SAFE 'N SURE as brand names for personal deodorant products would be likely to cause consumer confusion.
 
 
 31
 Based on the above Findings of Fact, the District Court judge concluded that the slogans and combinations of words relied on by plaintiff are common descriptive words and hence not protectable as trademarks since there was no proof of secondary meaning prior to the showing in 1953 of the use of SURE by the predecessor of defendant. The District Court judge also concluded that defendant had not abandoned the mark SURE and that even if plaintiff did own legally protectable trademark rights in any of the words relied upon, there was no likelihood of consumer confusion as to the origin of SURE and any product of plaintiff's. Finally, the District Court judge concluded that plaintiff was not entitled to any relief under the California 'Anti-Dilution' Statute (Cal.Bus. & P.Code, 14330) or under common law dilution theories; that plaintiff's delay in asserting its rights herein constituted laches; and that the mark SURE has been and is infringed by plaintiff's use of the trade-mark SAFE 'N SURE; and that defendant has not been guilty of any unfair competition.
 
 The issues before this court are:
 
 32
 1. Whether there is likelihood of confusion as to the origin of defendant's SURE deodorant in view of plaintiff's slogans, 'Use ARRID To Be Sure' and 'To Be Sure;'
 
 
 33
 2. Whether the quality of plaintiff's slogans will be diluted or destroyed by defendant's use and advertising of SURE; and
 
 
 34
 3. Whether plaintiff's failure to object to the use of the SURE trademark constitutes laches.
 
 
 35
 Before turning to a discussion of the issues, it may be noted at the outset that the parties are in disagreement over this court's function on review of this type of case. Plaintiff argues that the questions involved here are solely of law and that this court is therefore free to decide such questions de novo. Defendant counters that this is a 'fact' case under which the 'clearly erroneous' standard of F.R.Civ.P. Rule 52(a) controls.
 
 
 36
 Where there is no dispute as to the facts and the issue of confusing similarity is based solely upon a comparison of the trademarks themselves, this court is in a position equally as good as the trial court to decide the issues. Friend v. H. A. Friend and Company, 416 F.2d 526, 531 (9th Cir. 1969), cert. den., 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1970); Fleischmann Distilling Corp. v. Maier Brewing Company, 314 F.2d 149, 152 (9th Cir. 1963), cert. den., 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963). In the circumstances present here, however, the facts are in dispute, and therefore the district court's determination of lack of confusing similarity as to the source of defendant's SURE deodorant must stand unless clearly erroneous. Paul Sachs Originals Co. v. Sachs, 325 F.2d 212, 214 (9th Cir. 1963).
 
 1. Trademark Infringement
 
 37
 a. Likelihood of Confusion
 
 
 38
 In an action for trademark infringement the test is that of confusing similarity as to the source of the products involved. Friend, supra, 416 F.2d at 531. The District Court found that there was no likelihood of confusion as to the origin of SURE deodorant. Obviously the names ARRID and SURE are not confusingly similar, so the question is rather whether the trademark SURE is confusingly similar to the slogans 'Use ARRID To Be Sure' or 'To Be Sure.' A product can bear more than one trademark and a slogan is registerable as a trademark, but in the instant case the function of the name SURE differs from the descriptive use of the word 'sure' in any of plaintiff's 'To Be Sure' slogans.
 
 
 39
 A descriptive term may be entitled to protection if it is closely identified with the goods of one particular producer or has otherwise gained public recognition. Bristol-Myers Co. v. Approved Pharmaceutical Corp., 149 U.S.P.Q. 896 (N.Y.Sup.Ct.Spec.T. 1966) (restrained deliberate infringement of EXCEDRIN'S phrase, 'Extra Strength Pain Reliever'). Purely descriptive terms, however, are not so protected. See, e.g., Kellogg Co. v. Nat. Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938) ('shredded wheat'); Application of Helena Rubinstein, Inc., 410 F.2d 438, 441, 56 CCPA (1969) ('pasteurized'); Roselux Chemical Co. v. Parsons Ammonia Company, 299 F.2d 855, 862, 49 CCPA (1963) ('sudsy ammonia'); but cf. Roux Laboratories, Inc. v. Clairol Inc., 427 F.2d 823 (Cust. & Pat.App. 1970) (affirming dismissal of opposition to registration of slogan, 'Hair Color So Natural Only Her Hairdresser Knows For Sure' where court found such phrase to be more than merely descriptive).
 
 
 40
 Numerous factors can and often do play a role in the determination of likelihood of confusion in a trademark infringement case. Such factors include visual, verbal and intellective similarity; the class of goods in question; the marketing channels; the intent of defendant; evidence of actual confusion; and the strength or weakness of the marks in question. K-S-H Plastics, Inc. v. Carolite, Inc., 408 F.2d 54, 57 (9th Cir. 1969), cert. den., 396 U.S. 825, 90 S.Ct. 69, 24 L.Ed. 76 (1969); Pikle-Rite Company v. Chicago Pickle Co., 171 F.Supp. 671, 675 (N.D.Ill.1959); Syntex Laboratories, Inc. v. Norwich Pharmacal Co., 315 F.Supp. 45, 49 (S.D.N.Y.1970).
 
 
 41
 Plaintiff relies heavily on its long and substantial advertising expenditures vis-a-vis the minimal advertising by defendant as a factor in its favor. While such relative advertising expenditure is an additional factor to be considered, Sears, Roebuck and Co. v. Allstates Trailer Rental, Inc., 188 F.Supp. 170, 177 (D.Md.1960), it is not dispositive, for a 'large expenditure of money does not in itself create legally protectable rights.' Smith v. Chanel, Inc., 402 F.2d 562, 568 (9th Cir. 1968).
 
 
 42
 The District Court was not favorably impressed with the evidence adduced at trial in support of plaintiff's contention of confusing similarity and neither is this court. The consumer correspondence introduced by plaintiff consists largely of complaint letters and does not show trademark association of any slogans with plaintiff or ARRID. The District Court also concluded that the results of the national survey conducted by plaintiff in August, 1968, are not competent evidence as to the level of association of slogans containing the word 'sure' with ARRID at any relevant earlier point in time. We regard the survey as inconclusive for another reason: even assuming the validity of the survey in showing that some 25% Of those consumers questioned did in fact associate ARRID with the slogan 'To Be Sure,' the surveys tells us nothing at all about the relationship of SURE-- not the slogan 'To Be Sure'-- to the source of ARRID. Were defendant's product called TO BE SURE the results of the survey might be meaningful, but in its present form the survey wholly fails to bridge the gap between showing the association of ARRID and 'Use ARRID To Be Sure' and then showing the association between SURE and ARRID or the source of ARRID. Plaintiff could have bridged this gap by using a 'confusion survey,' but did not do so, and thus provided the District Court with an insufficient basis for concluding that consumers would likely be confused as to the source of SURE.
 
 
 43
 Plaintiff's legal argument to prove confusing similarity is based in part on several cases and in part on the proceedings before the Patent Office referred to earlier.
 
 
 44
 The cases relied on by plaintiff are far from dispositive here. For example, in Chemical Corp. of America v. Anheuser-Busch, Inc., 306 F.2d 433, 436-438 (5th Cir. 1962), cert. den., 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963), the court held that defendant's slogan was floor wax, 'Where there's life * * * there's Bugs,' was confusingly similar to Budweiser's beer slogan, 'Where there's life * * * there's Bud.' Although the products involved were not similar, the court had little trouble in concluding that the slogans were confusingly similar. The court noted defendant's bad faith in intentionally and obviously trading on the plaintiff's slogan, the unwholesome substitution of 'bugs' for 'Bud,' and the virtual similarity of the two slogans, all of which findings are absent in the instant case.
 
 
 45
 In A. Stein & Co. v. S. & L. Belt Co., Inc., 89 U.S.P.Q. 35 (Exmr. in Chief 1951), the Patent Office Examiner refused registration of 'Topps' for belts after finding it confusingly similar to plaintiff's 'Tops for Your Trousers' slogan used exclusively with its 'Paris' brand belts. Apart from the authority and correctness of this decision, it is sufficiently distinguishable from the instant case not to be determinative, particularly since the issue of likelihood of confusion was not there argued.
 
 
 46
 Finally, in Colgate-Palmolive Company v. Cohen, 147 U.S.P.Q. 534 (TTAB 1965), a trademark opposition proceeding, it was held that 'Tornado' as a name for a detergent was confusingly similar to the Ajax slogan 'White Tornado' or 'Cleans Like a White Tornado.' This is a closer case, but still not on point because (1) of the greater similarity of the names involved and because (2) 'Tornado' is a fanciful name as applied to cleaners; 'sure' is not such a fanciful name when applied to a product like deodorants.
 
 
 47
 Very few of the cases relied on by plaintiff present the situation where just one word from a multi-word slogan is allegedly appropriated. Certainly a trademark infringer need not expropriate the entire mark of another to be guilty of an enjoinable offense if the imitation is of the most salient feature of the mark in question. Pikle-Rite Company, supra, 171 F.Supp. at 675; 1 Nims, Unfair Competition and Trade-marks 221f at 679 (4th ed. 1947). Here, however, the word 'sure' is a common word and cannot be reasonably dissociated from the whole slogan as used by plaintiff in order to determine that it is salient.
 
 
 48
 The second major basis upon which plaintiff rests its claim of confusing similarity stems from proceedings before the Patent Office in which, it is claimed, the Patent Office twice decided that confusing similarity exists here.
 
 
 49
 In 1964 plaintiff filed an application in the Patent Office to register the slogan 'Use ARRID To Be Sure.' Defendant was not a party thereto and had no knowledge of the proceedings. The Patent Office Examiner made an initial rejection of the application because of descriptiveness and conflict with the already registered SURE mark. Plaintiff thereupon requested reconsideration and its counsel argued that there was no likelihood of confusion between SURE and 'Use ARRID To Be Sure.' This second application was later abandoned.
 
 
 50
 Plaintiff argues that this determination by the Patent Office offers support for its present position and should be relied upon by this court. Plaintiff argues further that the assertions made by plaintiff before the Patent Office are not binding here since the second application was withdrawn and because such assertions were not made to or relied upon by defendant.
 
 
 51
 Any such determination made by the Patent Office under the circumstances just noted must be regarded as inconclusive since made at its lowest administrative level and in light of the inconsistent position taken by plaintiff. See R. G. Barry Corporation v. A. Sandler Co., 406 F.2d 114, 116 (1st Cir. 1969). The determination by the Patent Office is rendered less persuasive still by the fact that the Patent Office did not have before it the great mass of evidence which the parties have since presented to both the District Court and this court in support of their claims.
 
 
 52
 b. Secondary Meaning
 
 
 53
 A second consideration in determining whether plaintiff's slogans are being infringed here is whether such slogans have attained secondary meaning, a necessary element here since the slogans cannot be regarded as distinctive or fanciful. K-S-H Plastics, supra, 408 F.2d at 58.
 
 
 54
 Secondary meaning has been defined as association, nothing more. 1 Nims 37 at 154. The test of secondary meaning is the effectiveness of the effort to create it, and the chief inquiry is directed towards the consumer's attitude about the mark in question: does it denote to him 'a single thing coming from a single source?' Aloe Creme Laboratories, Inc. v. Milsan, Inc.,423 F.2d 845, 849-850 (5th Cir. 1970), cert. den., 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970); 3 Callmann 77.3 at 360. As summarized by the Supreme Court in Kellogg Co. v. Nat. Biscuit Co., supra, 305 U.S. at 118, 59 S.Ct. at 113,
 
 
 55
 But to establish a trade name in the term * * * the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer.
 
 
 56
 The District Court concluded that the slogans in question were 'weak' and lacked sufficient consumer identification to be accorded a finding of secondary meaning. At all times, plaintiff's efforts were directed towards promoting ARRID: just as 'sudsy' or 'pasteurized' are descriptions for processes, so is 'Use ARRID To Be Sure' a description for a desired result.
 
 
 57
 Another factor militating against a finding of secondary meaning in plaintiff's slogans is their lack of exclusivity, i.e., other deodorant and kindred products have also utilized the term 'sure' in connection with their advertising. See Restatement of Torts, First, 729, Comment g (1938). Some examples of third party uses here are:
 
 
 58
 (1) 'Be Sure with SURE' used by Lexicon from 1953 to 1964 and defendant from 1964 to 1965; (2) 'Be Sure With Shure' used by Jewel Tea Company from 1956 to present on its containers of SHURE deodorant soap; (3) 'Safe-and-Sure Protection' and 'The Safe-and-Sure Deodorant' used by ETIQUET deodorant, 1946-1952; (4) 'She's sure-- are you?' used by ODO-RO-NO deodorant in 1940-41 and 1947; (5) 'Are You Sure of Your Present Perspiration Check?' and 'Are You Sure of Your Present Deodorant' used by FRESH deodorant, 1940-43; (6) 'MUM Is Sure,' 'SAFE, SURE, DEPENDABLE,' 'It's quick, safe, sure,' 'So Use MUM, to be sure,' used by MUM deodorant, 1941-1946; (7) 'SURE THING,' 'SURE SHE'S SURE,' 'SURE I'M SURE,' 'Dial's a sure thing,' used by DIAL deodorant soap, 1963-68.
 
 
 59
 Plaintiff attempts to dismiss does. See Polaroid Corporation v. Polardefendant proffered legitimate business that the term 'sure' is an oft-used one with no special characteristics or distinctiveness of its own. In the present context, such third-party usage is relevant to disprove the existence of trade-mark rights in the plaintiff.
 
 2. Trademark Dilution
 
 60
 Plaintiff's Second Cause of Action in its Amended and Supplemental Complaint was brought under both the common law doctrine of trademark dilution and the California 'Anti-Dilution' statute (Cal.Bus. & P.Code, 14330).
 
 
 61
 The law regarding the dilution doctrine is not altogether clear and cannot be readily summarized except to say that it is an offshoot of the equitable considerations inherent in the concept of unfair competition. See discussion in 3 Callmann 84.2 at 953-64. It is not settled, e.g., whether the doctrine of dilution broadens protection against unfair competition by dispensing with the need for showing likelihood of confusion. (At least one case has found that it does. See Polaroid Corporation v. Polaraid, Inc., 319 F.2d 830, 837 (7th Cir. 1963).
 
 
 62
 Here, even assuming the doctrine of dilution applicable, the District Court found that plaintiff's slogans were not sufficiently distinctive to be entitled to protection from alleged dilution. No cases have afforded protection under the California statute in circumstances such as that before us now,[3] and this court agrees with the District Court in concluding that plaintiff is not entitled to relief under any theory of dilution.
 
 3. Laches
 
 63
 The District Court found plaintiff guilty of laches in not pressing its claims or opposing the SURE mark's registration sooner. Plaintiff claims it was unaware of Lexicon's use of the SURE mark because of its minimal sales, but defendant points out that the registration of SURE was reported in trademark reporter services as well as toilet goods reporter services which must have come to the plaintiff's attention. Plaintiff also sought the use of the name SURE at an earlier time for use with a hair product, and even casual inquiry must have revealed that Lexicon had already registered that name.
 
 
 64
 Although there is some support in the cases for not finding laches under the circumstances present here,[4] the District Court's findings on which its conclusion was based cannot be said to be clearly erroneous, and accordingly we accept as well the District Court's conclusion regarding laches, although we do not rest the instant decision on that ground alone.
 
 4. Abandonment
 
 65
 Plaintiff's final claim is that defendant abandoned its rights to SURE because defendant made only nominal 'semi-mechanical' sales thereof with the sole intent of sustaining the mark. As the discussion above indicates, however, defendant proferred legitimate business reasons for its action, which reasons the District Court found sufficient to support a conclusion of no abandonment and with which we are in agreement. Even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith. Mendes v. New England Duplicating Co., 94 F.Supp. 558, 560 (D.Mass.1950), aff'd., 190 F.2d 415 (1st Cir. 1951).
 
 5. Conclusion
 
 66
 This court is convinced that plaintiff has failed to show such likelihood of confusion or secondary meaning as to require an injunction against the mark SURE when compared with its slogans utilizing the phrase 'To Be Sure.' The most this court could say is that there might be a possibility of confusion as to the source of plaintiff's and defendant's deodorant; there is certainly no likelihood of such confusion.
 
 
 67
 Accordingly, and for the reasons discussed above, this court affirms the decision of the District Court in all respects. Affirmed.
 
 
 
 *
 The Honorable Gerald S. Levin, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 As used herein, the term 'defendant' indicates primarily the principal defendant-appellee, The Procter & Gamble Company. Where the context requires, this term also denotes the other defendants-appellees
 
 
 [2]
 As used herein, the term 'plaintiff' indicates the plaintiff-appellant, Carter-Wallace, Inc. (a Delaware corporation), and where the context requires, its predecessor, Carter-Wallace, Inc. (a Maryland corporation), formerly known as Carter Products, Inc
 
 
 [3]
 At least one district court has refrained from giving the California statute an overly broad reading 'lest it swallow up all competition in the claim of protection against trade name infringement.' Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler, 305 F.Supp. 1210, 1217 n. 13 (D.C.1969)
 
 
 [4]
 It is fundamental that laches is not the mere passage of time, but requires instead detrimental reliance. Stork Restaurant v. Sahati, 166 F.2d 348, 363 (9th Cir. 1948); Layton Pure Food Co. v. Church & Dwight Co., 182 F. 24, 33 (8th Cir. 1910). Furthermore, no laches will be found where the defendant's interference with plaintiff's rights is minimal or inconsequential. Devlin v. McLeod, 135 F. 164, 167 (W.D.N.Y.1904); Rahtjen's American Comp. Co. v. Holzappel's Comp. Co., 101 F. 257, 262 (2d Cir. 1900), rev'd. on other grounds, 183 U.S. 1, 22 S.Ct. 6, 46 L.Ed. 49 (1901). See also G. D. Searle & Company v. MDX Purity Pharmacies, Inc., 275 F.Supp. 524, 532-33 (C.D.Cal.1967). Similarly, there is no laches where the defendant's encroachment is steady but slow. O. & W. Thum Co. v. Dickinson, 245 F. 609, 623 (6th Cir. 1917