HMH PUBLISHING CO., INC., a Delaware corporation, and Playboy Clubs International, Inc., a Delaware corporation, Plaintiffs-Appellants,

v.

Douglas LAMBERT et al.,
Defendants-Appellees.

No. 71-2007.

United States Court of Appeals,
Ninth Circuit.

July 10, 1973.

R. Dickey Hamilton (argued), Paul P. Selvin, Los Angeles, Cal., Devoe, Shadur, Plotkin, Krupp & Miller, Chicago, Ill., Selvin & Cohn, Los Angeles, Cal., James T. Fousekes, Esq., San Francisco, Cal., for plaintiffs-appellants.

Harry L. Gershon (argued), Kenneth C. Rollston, Robert L. Hitchcock, of Richards, Watson & Dreyfuss, Conrad Solum, of Lyon & Lyon, Los Angeles, Cal., for defendants-appellees.

Before HUFSTEDLER, TRASK and WALLACE, Circuit Judges.

TRASK, Circuit Judge:

This is an appeal from an action for trademark infringement[1] and unfair competition[2] arising from defendant-appellees' alleged infringement of plaintiff-appellants' marks "Playboy," "The Playboy Club" and "Playmate." Plaintiffs' complaint sought to enjoin the use of the names "Playgirl," "Playgirl Club" and "Playgirl Key Club" by the appellees in their promotion and operation of nightclub-bars in the Los Angeles area, and to recover damages for alleged acts of unfair competition.

The case was tried without a jury and the district court entered a judgment for defendants on all counts. Jurisdiction of the district court was based on 15 U.S.C. § 1121, the Lanham Trade-Mark Act, 15 U.S.C. §§ 1051–1127, and on 28 U.S.C. § 1332, diversity of citizenship.

Plaintiffs are HMH Publishing Co., Inc. (HMH) and Playboy Clubs International, Inc. (PCI), corporations organ-

---

1. The Lanham Trade-Mark Act, 15 U.S.C. § 1114, provides:
   "(1) Any person who shall, without the consent of the registrant—
   "(a) use in commerce any reproduction, . . . . copy, or colorable imitation of a registered mark in connection with the sale . . . or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . ."

2. Section 14330 of the California Business and Professions Code provides that:
   "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

ized and existing under the laws of Delaware, with their principal offices and places of business in Illinois. The individual defendants, Douglas Lambert and John Andrews, are residents of California, and the corporate defendant, Playgirl Key Club, Inc., was organized and exists under its laws.

HMH publishes and distributes Playboy magazine, which had a circulation in California in 1964 of more than 325,000. HMH also owns registered trademarks and service marks including "Playboy," "The Playboy Club," "Playmate," a key design and a bunny head. PCI, under a license from HMH, franchises others to use the marks of HMH including nightclub-restaurants known as "Playboy Clubs." These clubs have over 750,000 key holders, and are widely advertised and publicized. Playboy Clubs generally conform to standards of quality and control required by the license agreement between HMH and PCI. The bunny head design is used in connection with the operation of the Playboy Clubs. In addition, attractive young women, distinctively costumed and referred to as "Bunnies," serve food and beverages to the patrons.[3]

A large California promotion for Playboy Club keys was begun in 1964 in anticipation of the opening of the Los Angeles Playboy Club. More than two million solicitations were mailed in California, and more than $3,600,000 was expended through the year 1964 in nationwide promotions for all PCI's products.

Defendants Lambert and Andrews, as partners, have owned three separate nightclub-bars known respectively as "The Play Girl," "The Play Girl # 2" and "The Play Girl # 3." The first of these clubs opened on December 31, 1964. Since March 15, 1969, defendant Playgirl Key Club, Inc. has owned and operated a nightclub-bar under the name "Playgirl Club" in Garden Grove, California. With respect to this club, the physical plant is made up of one large room with a circular bar in which "go-go dancers" perform at various times during the evening. At one end of the room was a large stage on which lounge shows are presented. There is no separate dining room or bar, and no food other than sandwiches is served.

Defendants' nightclub is not a key or private club;[4] admission is open to the general public. The go-go dancers and waitresses wear fringed bikinis which the trial court found bore no resemblance to the "bunny" costume. The court further found that the decor and physical surroundings of the Playgirl Club had no resemblance to a Playboy Club, and that defendants had made no effort to identify in any manner with Playboy magazine, to utilize the characteristic bunny head, or generally to operate in any way similar to the Playboy Clubs.

The district court then concluded that the name "Playgirl" is not confusingly similar to, nor would it be likely to cause confusion to members of the public with, either "Playmate" or "Playboy." Therefore, defendants were found not to have infringed on plaintiffs' marks nor to have engaged in any unfair competition with plaintiffs.

Appellants claim that the use of "Playgirl" and "Playgirl Club" is likely to confuse or deceive the public as to the source of the services or goods they are buying, or of the place of business they are patronizing. They contend that the district court applied an erroneous legal standard for determining the likelihood

3. Further background information may be found in HMH Publishing Co. v. Brincat, 342 F.Supp. 1275 (N.D.Cal.1972); HMH Publishing Co. v. Turbyfill, 330 F.Supp. 830 (M.D.Fla.1971).

4. Appellants place importance of defendants' promotional brochure, which pictured several features arguably very similar to those found in Playboy Clubs. This evidence is more relevant to the question of defendants' intent, and, as discussed later, we have no basis to hold the finding of the district court that defendants did not intend to infringe, clearly erroneous.

of confusion—*i. e.*, a passing off standard that confusion was likely only if members of the public believed that the "Playgirl Club" was a "Playboy Club." Regardless, appellants argue, it is still for this court to decide the infringement and unfair competition issues because there are no disputed factual issues, and the determination of likelihood of confusion is a conclusion of law. Finally, appellants claim the trial court erred in rejecting evidence of specific instances of actual mistake which are claimed to be relevant to the issue of confusion.

■ The first question is whether defendants' use of the names "Playgirl," "Playgirl Club" and "Playgirl Key Club"

> " 'is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services.' This test requires consideration of a number of factors, including the visual, verbal and intellective similarity of the marks, the class of goods to which the marks are applied, the marketing channels through which the goods are sold, and the intent of defendant in adopting the mark." K–S–H Plastics, Inc. v. Carolite, Inc., 408 F.2d 54, 57 (9th Cir. 1969), cert. denied, 396 U.S. 825, 90 S.Ct. 69, 24 L. Ed.2d 76 (1970) (citations omitted).

*Accord,* Carter-Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794, 799–800 (9th Cir. 1970); Johnson & Johnson v. Diaz, 339 F.Supp. 60, 63 (C.D.Cal.1971). The test is not that there might be a *possibility* of confusion as to the source of plaintiffs' and defendants' business, but rather whether there is a likelihood of confusion as to source. *Carter-Wallace, Inc., supra,* 434 F.2d at 804.

■ The trial court found, and we agree, that the evidence disclosed that the type of nightclub operated by defendants is not similar to the type of nightclub licensed by plaintiffs. The trial court found further that defendants adopted the name "Playgirl" without reference to plaintiffs' marks, and did not intend to infringe upon nor to create confusion with plaintiffs' marks. We discern no basis upon which to hold this finding of fact clearly erroneous. It appears to this court that defendants have maintained a distinctive, recognizable difference between their marks and those of plaintiffs, and we agree with the district court that there is no likelihood of confusion as to the source of the nightclubs operated by defendants.

■ Appellants rely heavily on their long and substantial advertising expenditures and promotional campaign when compared with the minimal advertising undertaken by defendants as a factor entitling them to greater protection. As this court held in Carter-Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794, 800 (9th Cir. 1970):

> "While such relative advertising expenditure is an additional factor to be considered, it is not dispositive, for a 'large expenditure of money does not in itself create legally protectable rights.' " (citations omitted).

■■ Appellants attack the finding of the district court as based upon an application of an incorrect legal standard; specifically, that a passing off, rather than an infringement test was used.[5] However, if the lower court's conception of the law of infringement was too restrictive, the record does not

5. Infringement under the Lanham Act "likely to cause confusion" test means that the average purchaser or customer would be likely to believe that the infringer's product "had some connection" with the product of the copyright owner. Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 155 (9th Cir. 1963).
   On the other hand,
   "Defendant's substitution of another product in response to a request for plaintiff's trademarked product . . . without . . . notice to the purchaser . . . is called palming off, passing off or substitution. Such acts are an infringement of plaintiff's lawfully registered trademarks and are unfair competition." Coca Cola Co. v. Dorris, 311 F.Supp. 287, 289 (E.D.Ark. 1970). (citations omitted).

relate this mistake to us. The trial court found no physical similarity between the nightclubs of defendants and plaintiffs as an element of the broader test of likelihood of confusion. We are not convinced that the trial court applied an incorrect legal standard. Nor do we, upon our own examination of the record,[6] find any likelihood of confusion of source.

Appellants cite us to a number of cases which they claim support their theory of likelihood of confusion.[7] This contention is answered by a reference to an earlier case in this circuit which stated:

"It is sufficient to say that we have carefully examined the cases thus cited and it is our opinion that they all are factually distinguishable from the case before us. It is elementary that in the decision of a case of this kind, involving the question of confusing similarity, each case must stand on its own facts, and prior decisions are of little assistance." Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 160 (9th Cir.), cert. denied, 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed. 2d 1053 (1963).

■ Appellants urge that California law on unfair competition would provide a basis for relief under a theory of trademark dilution. We have been shown no cases which have afforded protection under the California statute in circumstances such as those before us now; we agree with the district court that plaintiffs are not entitled to relief under any theory of dilution.[8]

■ The final contention of appellants is that instances of actual confusion were improperly rejected by the trial court, on grounds of relevancy and hearsay. The rejected items were in the nature of letters, envelopes and articles. There was no showing that the excluded items associated the nightclub operated by defendants with one or more of plaintiffs' trademarks. Not only did plaintiffs fail to demonstrate that these materials offered in evidence could have had any bearing on the class of prospective purchasers of these nightclub services, but the materials tell us nothing at all about the relationship of any "Playgirl Club" operated by these defendants, with the source of Playboy Clubs. We therefore agree with the lower court's ruling that these excluded items had no probative value on the issue of whether a patron of a Playgirl Club would be likely to be confused as to the source of origin of the services.

The judgment is affirmed.

---

6. If the facts are not in dispute and the issue of confusing similarity is based solely, upon the comparison of the marks in the context of extrinsic facts, the appellate court may determine the issue of confusing similarity. Carter-Wallace Inc. v. Procter & Gamble Co., 434 F.2d 794, 799 (9th Cir. 1970); Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 152 (9th Cir.), cert. denied, 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963).

7. The cases cited are: Myrurgia, S.A. v. Comptoir De La Parfumerie, 441 F.2d 673 (C.C.P.A.1971); Manpower, Inc. v. Womanpower, Inc., 288 F.Supp. 132 (D. P.R.1968); and HMH Publishing Co. v. Hale, 156 F.Supp. 594 (N.D.Cal.1957). This latter case involved quite different facts than the present case, particularly the subject matter and kind of infringement alleged.

8. One California district court has refrained from giving the California statute an "overly broad application lest it swallow up all competition in the claim of protection against trade name infringement." Coffee Dan's Inc., v. Coffee Don's Charcoal Broiler, 305 F.Supp. 1210, 1217 n. 13 (N.D.Cal.1969).