ASHLAND OIL, INC., Plaintiff,

v.

OLYMCO, INC., et al., Defendants.

Civ. A. No. 91–0310–L (J).

United States District Court,
W.D. Kentucky.

March 31, 1994.

Danny C. Reeves, John A. West, Greenebaum, Doll & McDonald, Lexington, KY, Carmin D. Grandinetti, Richard J. Emmett, Kathie M. McDonald, Greenebaum Doll & McDonald, Louisville, KY, for plaintiff.

Jack Allen Wheat, Roach & Wheat, Louisville, KY, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

JOHNSTONE, Senior District Judge.

Ashland Oil, Inc. ("Ashland") brought this action against Olymco, Inc. ("Olymco") alleging trademark infringement, false designation of origin, and unfair competition and trade practices. Both Ashland and Olymco are providers of oil change services. Ashland seeks to recover damages and preclude Olymco from using its "instant oil change" trademark in referring to Olymco's oil change services. Olymco counterclaimed for cancellation of Ashland's instant oil change trademark registration.

The Plaintiff moved for a preliminary injunction to enjoin the Defendant's continued use of the instant oil change trademark. This court found that the term "instant oil change" was descriptive and accordingly that the burden was upon the Plaintiff to show that "secondary meaning" had inured to the Plaintiff's trademark. After a preliminary evidentiary hearing on May 24, 1991, this court found that the Plaintiff failed to produce sufficient evidence to establish "secondary meaning" prior to the Defendant's first use of the instant oil change phrase. The Plaintiff's motion for preliminary injunction was denied.

Plaintiff's infringement claim and Defendant's trademark cancellation counterclaim were tried on August 5, 1993 before the court without a jury. The ultimate issue was whether the Plaintiff's trademark "instant oil change" had obtained secondary meaning. The court, having considered the pleadings, the testimony of the witnesses, the documents, photographs and drawings in evidence, and being otherwise sufficiently advised, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Fed.R.Civ.P.

## FINDINGS OF FACT

Upon the record, the court finds the following to be the relevant facts of this case. To the extent that the following findings of fact contain conclusions of law, they are adopted as such.

1) Ashland's predecessors applied to the United States Patent and Trademark Office (the "USPTO") for registration of the service mark "instant oil change." The USPTO determined that the mark was descriptive and placed it on the supplemental register as not having satisfied the requirements of the principal register.

2) The mark "instant oil change" is a registered trademark of Ashland and was trans-

ferred from the supplemental register to the principal register of the USPTO on March 8, 1988. See Plf.Ex. 1B. This transfer was based upon a presumption of secondary meaning inuring to the mark after five years of continuous use in commerce. 15 U.S.C. § 1052(f).

3) Olymco began using the phrase "instant oil change" in advertising and signage in February 1990.

4) Olymco had constructive notice of Ashland's trademark "instant oil change" since it was on file in the principle register of the USPTO as of March 8, 1988. 15 U.S.C. § 1072.

5) Olymco had actual notice of Ashland's use of the phrase "instant oil change" on or before February 1990. Olymco used the phrase on signage and in advertising not in bad faith, but rather based upon the good faith belief of their advertising agent that the term was not a trademark.

6) Ashland presented the testimony and report of Dr. Michael Rappaport concerning a consumer study performed by his firm in March of 1992. The report shows that a small segment of the consuming public in the Louisville area associates "instant oil change" with a single source.

7) Dr. Rappaport's report claims that "42% of the applicable public in Louisville associate INSTANT OIL CHANGE with a single company." After adjusting for "guessing" the report finds that "26% of the applicable Louisville population have come to associate a single company with INSTANT OIL CHANGE." Plaintiff's Exhibit No. 7, page 7. Even if Rappaport's report is taken as proper and non-biased, it is merely evidence of secondary meaning as of March 1992. It does not accurately depict the level, if any, of secondary meaning Ashland's mark had when Olymco first began to use it in February 1990.

8) For fiscal year 1987 through fiscal year 1990 Valvoline Instant Oil Change, Inc. ("Valvoline") had total national sales of $170,-922,000 and advertising expenses of $14,441,-000. Over this same period Valvoline had total sales in the Louisville market of $6,278,-

000 and advertising expenses of at least $164,000.

9) Valvoline's standard practice was to base advertising expenses as a percentage of sales, and this percentage was always the same. For fiscal year 1987 through fiscal year 1990 Valvoline's nationwide advertising expenses were considerably lower than amounts expended by its major competitors. (Trial Transcript, p. 48, L. 11–p. 50, L. 2).

## CONCLUSIONS OF LAW

Upon the foregoing findings of fact the court makes the following conclusions of law. To the extent that these conclusions of law contain findings of fact, they are adopted as such.

### I. JURISDICTION

1) This court has jurisdiction over the parties, and the subject matter of this action is within its trademark jurisdiction. 28 U.S.C. § 1338(a). This court has the jurisdiction to determine Ashland's rights to the registration of its trademark "instant oil change" and, upon finding that no secondary meaning has inured to the mark, may order its cancellation in whole or in part. 15 U.S.C. § 1119.

### II. DESCRIPTIVE NATURE OF THE MARK "INSTANT OIL CHANGE"

2) Ashland's trademark, "instant oil change," is descriptive since it is non-inherently distinctive and merely describes the intended function of the services it provides, i.e., rapid, quick oil change. In particular, "instant" merely describes a desirable characteristic of the services provided by Ashland, Olymco and other competitors. *See Burke–Parsons–Bowlby v. Appalachian Log Homes,* 871 F.2d 590, 594, 10 U.S.P.Q.2d 1443, 1445 (6th Cir.1989).

3) In determining whether a term is used in a descriptive manner, courts look to the dictionary definition of the term. *See American Heritage Insurance Co. v. Heritage Co.,* 494 F.2d 3, 182 U.S.P.Q. 77, 82, n. 5 (5th Cir.1974). Courts then determine if such a term's meaning is known to and "readily grasped" by large numbers of the consuming public. *See In re Miteyfast Service Centers,*

*Inc.,* 223 U.S.P.Q. 1154, 1155–56 (T.T.A.B. 1984). Ashland uses the term "instant" to describe their oil changing services in a manner consistent with the dictionary definition and commonly understood use of such term. Such meaning is commonly known to and readily grasped by the consuming public. Accordingly, the term "instant oil change" is used in a descriptive manner.

■ 4) Where descriptive terms (such as instant, rapid, quick, etc.) are attached, absent any distinguishing designation, to a generic phrase defining goods or services (such as "oil change") solely for the purpose of describing such generic goods or services, such use is ill-suited for trademark purposes. The primary principle of trademark law is to allow the use of marks to distinguish one source of goods or services from another. The use of terms for solely descriptive purposes runs contra to this ultimate goal and serves to make unavailable words useful in describing all such similar goods or services. *See Gimix, Inc. v. JS & A Group, Inc.,* 699 F.2d 901, 906, 217 U.S.P.Q. 677, 682 (7th Cir.1983).

5) Where the use of a mark is merely descriptive, then such mark may be denied registration on the principle register. 15 U.S.C. § 1052(e).

■ 6) A mark which is found to be descriptive and placed on the supplemental register may subsequently be placed upon the principle register. To justify this upgrade, the applicant is required to show that the mark has become distinctive of the applicant's services. In an ex parte proceeding, the USPTO may accept as *prima facie* evidence of distinctiveness (*i.e.,* secondary meaning) an applicant's proof of substantially exclusive and continuous use of the mark by the applicant in commerce for a period of five years prior to the date on which the claim of distinctiveness is made. 15 U.S.C. § 1052(f). Based upon this presumption of distinctiveness, the USPTO transferred Ashland's mark to the principal register.

### III. REGISTRATION AND BURDEN OF PROOF

■ 7) The fact that Ashland's mark is registered on the USPTO's principle register establishes a *prima facie* presumption of validity. 15 U.S.C. § 1115(a). This presumption is rebuttable and does not preclude a party "from proving any legal or equitable defense or defect ..." *Id.* This presumption is easily overcome upon a showing that a mark is merely descriptive of the type of services offered by the mark holder. *See generally Burke–Parsons–Bowlby, supra.*

■ 8) Registration on the principle register does not enlarge a registrant's substantive rights or shift the ultimate burden of proof. A mark challenger bears the burden of going forward with evidence to meet or rebut the presumption. The ultimate burden of proving mark validity rests with the registrant. *See Burke–Parsons–Bowlby,* 871 F.2d at 597. Once Olymco overcame the presumption of validity by producing evidence that the mark was merely descriptive, the ultimate burden of proving mark validity, including establishing secondary meaning, rested upon Ashland.

### IV. SECONDARY MEANING

■ 9) Descriptive terms are not protectable absent a showing of secondary meaning, *i.e.,* distinctiveness. *See Burke–Parsons–Bowlby,* 871 F.2d at 594 citing *20th Century Wear, Inc. v. Sanmark–Stardust Inc.,* 747 F.2d 81, 87 (2nd Cir.1984). Establishing secondary meaning is a substantial burden and must be by a preponderance of the evidence. *Id.* at 596.

■ 10) An owner of a descriptive mark must establish the existence of secondary meaning in its mark prior to the use of such mark by the challenger. To establish secondary meaning a mark holder must show that "the primary significance of the term in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73, 78, 39 U.S.P.Q. 296, 299 (1938). Ashland must show by a preponderance of the evidence that the consuming public perceived a distinction in the mark "instant oil change" such that the mark was associated with a single, though anony-

mous, source prior to Olymco's use of the mark.

11) The best direct evidence of secondary meaning is expert testimony based upon a properly designed and conducted consumer survey report. Ashland attempted to demonstrate secondary meaning by presenting the testimony and report of Dr. Michael Rappaport concerning a consumer study performed by his firm in March of 1992. The report shows that when it was taken, only a small segment of the consuming public in the Louisville area associated "instant oil change" with a single source. Dr. Rappaport testified that this group would have been even smaller had the study been conducted in 1990. Accordingly, the court concludes that the report of Dr. Rappaport fails to sufficiently establish that the primary significance of the mark in the eyes of the consuming public was to associate it with a distinct, anonymous source when Olymco began using it in February of 1990.

12) Olymco produced the testimony and report of Dr. James B. Spalding to support its position that no secondary meaning in Ashland's mark existed prior to Olymco's use thereof. Although Ashland's criticisms of Dr. Spalding's survey and testimony may have some merit, the court finds it credible. Furthermore the burden was ultimately upon Ashland to positively establish the existence of secondary meaning in its mark.

13) In the absence of direct proof of secondary meaning, courts are allowed to draw inferences of secondary meaning from evidence of the following; long-term usage of the mark, effort and expenditures of money put toward developing a reputation and good will associated with the mark, history of sales volume of the affected product or services, and advertising expenses and other marketing costs attributable to developing consumer recognition of the mark with a single source. *See Burke–Parsons–Bowlby*, 871 F.2d at 596.

14) Ashland presented evidence of continuous use of its mark from the early 1980's through May 1993 and sales volume and advertising expenditures from fiscal 1987 through May 1993. While this evidence is relevant as to secondary meaning as of May 1993, the court must confine its review to evidence of secondary meaning prior to Olymco's first use of the mark in February of 1990. Prior to this critical date, Ashland's expenditures were less than what its competitors spent and were merely sufficient to survive in the market. The evidence shows that Ashland applied a strict percentage of sales as a means to arrive at advertising allowances and put forth no specific effort or expenditures toward developing a reputation and good will for the trademark. *See Burke–Parsons–Bowlby*, 871 F.2d at 596. Ashland's sales and advertising expenditures prior to February of 1990 thus fail to provide an adequate basis upon which this court may draw an inference of secondary meaning. Accordingly, the court concludes that secondary meaning had not inured to the Ashland service mark "instant oil change" prior to Olymco's first use.

15) Ashland has failed to show that the meaning of its mark, as perceived by the consuming public, goes beyond its primary, descriptive definition. Accordingly, it does not have an exclusive right to use the descriptive phrase "instant oil change," it does not have a mark to protect, and it cannot preclude Olymco or others from using it.

## V. TRADEMARK CANCELLATION

16) This court has the authority to order the cancellation of Ashland's service mark "instant oil change," and to have it removed from the principal register. 15 U.S.C. § 1119.

17) The USPTO grants registration pursuant to an ex parte administrative proceeding. It is the duty of this court to decide mark validity after conducting adversarial proceedings, during which the full weight of the evidence on both sides may be evenly considered. *See Frankfort Distilleries v. Labrot & Graham*, 34 F.Supp. 131, 132 (E.D.Ky.1940); *Carter–Wallace, Inc. v. The Procter & Gamble Co.*, 434 F.2d 794, 802, 167 U.S.P.Q. 713, 719 (9th Cir.1970).

18) Having found that the Ashland "instant oil change" mark is merely descriptive and that secondary meaning has not inured thereto, this court concludes that said service

mark should be cancelled and removed from the principal register.

## JUDGMENT

For the reasons stated herein,

IT IS ORDERED:

1. Ashland's claim of trademark infringement is dismissed.

2. Judgment is entered for Olymco, Inc. on its counterclaim for cancellation of Ashland's service mark.

3. Plaintiff's registered trademark "instant oil change," Reg. No. 1,480,007, shall be cancelled as a service mark and removed from the principal register of the United States Patent and Trademark Office, pursuant to 15 U.S.C. § 1119.

4. All remaining claims are dismissed as moot.

This is a final and appealable order and there is no just cause for delay.